CARTER v. McNEAL.

Opinion delivered April 27, 1908.

1. DEEDS—DELIVERY—PRESUMPTION FROM GRANTEE'S POSSESSION.—Where a deed is shown to be in the grantee's possession, a presumption of delivery arises, and the burden is on one who maintains the contrary to disprove its delivery. (Page 153.)

2. HUSBAND AND WIFE—EFFECT OF CONVEYANCES BETWEEN.—A deed of land by a husband directly to his wife, in the absence of fraud, conveys to her the equitable estate. (Page 154.)

Appeal from Benton Chancery Court; T. Haden Humphreys, Chancellor; reversed.

STATEMENT BY THE COURT.

Appellees brought this action in the Benton Chancery Court to cancel two deeds, one executed by their father to their mother,

and the other executed by their mother to their sister, to a part of the lands embraced in the first deed. The first deed is asked to be cancelled because their father executed it with intent to defraud his creditors, and because it was not delivered to their mother.

Charges of undue influence and want of mental capacity in the grantor are the grounds on which the second deed is sought to be avoided.

The undisputed facts are that Benjamin Ruddick owned a homestead in Benton County, Arkansas, consisting of 120 acres. In June, 1903, he was threatened with a suit for slander. He believed that his homestead could be sold to satisfy any judgment that might be obtained against him in that suit. In order to avoid this, he executed a deed to his homestead to his wife. He gave instructions to the justice of the peace, who took his acknowledgment, to have the deed recorded. The next day he and his wife left for Texas. On the same day, and before the deed had been carried to the clerk's office for record, one of his sons got the deed from the justice, carried it to his father's house and put it among his papers. This was done by direction of the father.

After a short time, Benjamin Ruddick and his wife returned home and resided upon the homestead until his death, which occurred in July, 1904. He left surviving him, his widow, Nancy Adeline Ruddick, and his children, Harriet McNeal, Nancy Ann Ruddick, William Ruddick, J. C. Ruddick, Clarina Anderson, Lizzie Smith and Julia Carter.

A son, Lafayette Ruddick, had died about eight or ten years before, leaving one child, Clyde Ruddick, who was a minor at the date of the death of Benjamin Ruddick. All were made parties plaintiffs in the suit except Nancy Adeline Ruddick and Julia Carter, who were made defendants.

The deed of Benjamin Ruddick to his wife, Nancy Adeline Ruddick, was filed for record on the 4th day of October, 1904, and embraced his homestead. The deed of Nancy Adeline Ruddick to Julia Carter was executed on the 11th day of October, 1904, and filed for record the same day. A part of the homestead, comprising forty acres, was the quantity of land conveyed by this deed. Other facts appear in the opinion.

The chancellor found that there had been no delivery of the first deed, and that the second deed was null and void, and rendered a decree cancelling both deeds. Defendants have appealed.

*Rice & Dickson,* for appellants.

1. Mrs. Ruddick's own deposition, taken alone without the support of other disinterested witnesses appearing in the record, is conclusive proof of her mental capacity to make the deed to her daughter. The proof is also ample to show that it was executed, not because of undue influence exerted upon her, but for a valid and sufficient consideration. If she had been an imbecile, the deed, under the circumstances shown in the record, would have been valid and binding. 73 Ark. 170.

2. There was no agreement at the time of the meeting of the heirs after the death of Ruddick. The things merely "talked of" at this meeting and never consummated or completed, not in writing and without any consideration, were certainly not binding on her. Kirby's Digest, § 3654, subdiv. 4; 44 Ark. 83.

3. Did not the title pass when Ruddick executed and acknowledged the deed to his wife, and left it with the notary public with direction to take it and have it recorded, at the same time leaving with the notary the money to pay for the recording? 6 Ark. 109; 24 Ark. 11; 9 Ark. 91; 40 Ark. 243; 20 Ark. 216; 77 Ark. 89; 52 S. W. 1033. If this was not a sufficient delivery, there was at any rate a delivery when, afterwards, he "went and got his papers," took out the deed and handed it to his wife. 82 Ark. 492; 74 Ark. 104.

4. The demurrer should have been sustained because plaintiffs allege that they are suing as heirs of a fraudulent grantor. The administrator only could sue. Kirby's Digest, § 81. Yet he could not maintain suit for the benefit of either heirs or creditors on the ground that the conveyance was fraudulent, since they are not permitted to complain of the sale of a homestead on any grounds. 57 Ark. 610; 67 Ark. 325; 1 Am. & Eng. Enc. of Law (2 Ed.), 274; 86 S. W. 636; 63 S. W. 125.

*Rice & Rice,* for appellees.

1. The deed executed by Ruddick to his wife was not delivered, and did not become operative. "The act of delivery

must be with intent on the part of the grantor to divest himself of title, and the deed must be accepted by the grantee with intent to take title; the grantor must part with the deed and all right and dominion over it, intending it shall operate as a deed, and the acceptance must be with such intent." 81 S. W. 1091; 17 S. W. 319; 16 S. W. 497; 10 S. W. 856; 65 S. W. 975; 80 Ark. 11.

2. The interest of Mrs. Ruddick in the lands was defined and fixed by the agreement had at a family settlement shortly after her husband's death.

3. Mrs. Ruddick's deed to Julia Carter was void or voidable because of undue influence, both actual and presumptive, inducing the execution thereof. 27 Am. & Eng. Enc. of Law, 452-461; 1 Jarman on Wills, 66-8, and note.

4. The statute, Kirby's Digest, § 81, has not been construed, but it is manifest from the statute that a fraudulent grantor, within the law, is one who conveys real estate with intent to defraud *creditors* (not heirs at law); it includes all classes of real property cast by descent upon the heirs at law, and recognizes their right of inheritance in real property conveyed by the ancestor with intent to delay creditors. If the land conveyed is a homestead, the right is expressly given to sue and recover for the use and benefit of the heirs at law; but is not given to creditors, and the fraudulent grantor of the homestead may be secure against attacks of creditors, but not of the heirs.

HART, J., (after stating the facts.) Appellees claim that the deed of Benjamin Ruddick to his wife was never delivered. The burden of proof to show this fact was upon appellees. *Smith* v. *Stephens,* 82 Ark. 50.

They adduced testimony in the court below to the effect that after his return from Texas Benjamin Ruddick told several persons that the deed (referring to the one executed to his wife) was of no effect because it had not been delivered. That soon after his death his brother, two of his intimate friends and some of his children met to arrange a family settlement, and that the defendant Nancy A. Ruddick was present and did not claim the land. That, when asked where the deed was, she replied that she did not know. That the deed was produced by the husband of defendant Julia Carter. That it was then agreed that the widow should have the homestead for life, and plans were

made to have it set apart for her use by proper orders of court. Nothing further in this behalf was ever done.

Opposed to this is the positive testimony of the defendant Nancy A. Ruddick, unobjected to, that her husband sometime during the fall before his death delivered the deed to her. She detailed the circumstances under which he delivered it. She said that he was looking over some papers one day; that he picked up the deed, and handed it to her, saying, "This is yours;" that she unfolded it, looked at it, and put it back in a bureau drawer where he kept their papers; that it was there when her husband died; that after this time she talked with her husband about making a deed to their daughter, Julia Carter, and that he advised her to do it.

We think the chancellor erred in finding that there was no delivery of the deed. The testimony adduced by appellees was not sufficient to overcome her positive testimony. The fact that her husband continued to manage the land which was their homestead was natural. The testimony does not show that she took any part in the family meeting which was held soon after her husband's death except to answer such questions as were asked her, and her seeming acquiescence in the expressions of opinion by her deceased husband's brother and by her children that she had only a life estate in the lands may be attributed to ignorance on her part of the legal effect of the deed, or it may have been occasioned by her grief at the recent loss of her husband.

A deed of land by a husband directly to his wife, in the absence of fraud, conveys to her the equitable estate. *Ogden* v. *Ogden*, 60 Ark. 70; *George Taylor Com. Co.* v. *Bell*, 62 Ark. 26.

When the deed was first executed by Ruddick, it was done for the declared purpose of preventing his lands being sold in satisfaction of an anticipated judgment against him; but this cause had ceased to exist at the time it was delivered to his wife. Hence we infer that it was done to make provision for her in case she outlived him.

We think the testimony fails to show that the deed from Nancy A. Ruddick to Julia Carter was obtained by undue influence. Nor do we think a want of mental capacity on the part of the grantor to make the deed was shown. Besides, she testi-

fied in this case, and said she was satisfied, and that she was happy, living with her daughter, Julia Carter; that the consideration expressed in the deed was that the grantee should support her during her natural life. Moreover, an examination of the record shows that she was subjected to a rigid cross-examination, the result of which shows that her mind was clear, and that she fully comprehended what she was doing when she executed the deed to her daughter.

This was a ratification of her former execution of the deed, if any was necessary. Besides, she was living at the date of the trial, and her heirs could not bring suit to set aside her deed to her daughter. Their right to do this was predicated upon the theory that the deed from Benjamin Ruddick to his wife was invalid.

Reversed and remanded with directions to enter a decree not inconsistent with this opinion.