## BOOE *v.* VINSON.
## Opinion delivered April 15, 1912.

1. WILLS—JURISDICTION OF EQUITY.—Equity has jurisdiction to construe a will which purports to create a trust. (Page 444.)

2. TRUST—CHARITY—INDEFINITENESS.—A will which disposes of a portion of the estate and leaves the remainder to "be used for charitable purposes," without indicating any special object or any plan or scheme for carrying out the purpose or leaving it to the discretion of any one to select the beneficiaries, is too vague and uncertain and must fail. (Page 445.)

3. WILLS—CONSTRUCTION.—The purpose of construction of a will is to ascertain the intention of the testator from the language used as it appears from consideration of the entire instrument; and when such intention is ascertained, it must prevail, if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will. (Page 445.)

4. TRUST—SPENDTHRIFT TRUST.—A will conveying all of the testator's property to his nearest of kin, provided that they shall not receive more than a certain amount per annum for their maintenance as long as they live, is not sufficient to create a spendthrift trust. (Page 446.)

5. WILLS—PRESUMPTION.—A testator is presumed to intend to dispose of his entire estate. (Page 448.)

6. SAME—TIME OF VESTING OF ESTATE.—The law favors the vesting of estates, and, in the absence of a contrary intention appearing in a will, the estate will vest at the time of his death; and if a will is susceptible of a dual construction, by one of which the estate becomes vested and by the other it remains contingent, the former construction will be adopted. (Page 448.)

7. TRUST—WHEN VESTED.—Where a will left all of the testator's property to his nearest of kin with a proviso that they shall not receive more than a certain amount per annum for their maintenance as long as they live, and that at their death what is left, if anything, shall "be used for charitable purposes," the latter clause being void for uncertainty, the entire estate vested in the devisees; and if the executor, having authority to appoint a trustee, be regarded as a trustee, since he has no further duties to perform, the trust will be declared at an end. (Page 449.)

Appeal from Prairie Chancery Court, Northern District; *John M. Elliott*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

This suit was brought by Carrie and Bennie Vinson, devisees under the will of Howard Beine, against the executor of his estate and all other of his relatives for a construction of

the will and a determination of their rights in the estate thereunder.

Howard Beine died in Prairie County, Arkansas, in December, 1907, testate, and disposed of all his estate by will, which was duly probated, and contained the following, among other, clauses:

"All my estate, real, personal and mixed, I give and bequeath to my aunt, Mrs. Carrie Vinson, and her daughter, Bennie Vinson, subject to the following conditions and bequests:

"The property, real and personal, must be so held in trust by some trust company or responsible individual, who shall be named by my executors and trustees, that Mrs. Vinson and Bennie shall not receive more than $1,200 per annum for the maintenance of both of them as long as they shall live; at their death it is my desire that what is left, if anything, be used for charitable purposes."

The estate consisted of personal property of the value of about $50,000 and real estate of the value of $25,000. A bequest of diamonds already in possession of the legatee was made, and also of a debt, of a certain sum, to the debtor.

W. I. Booe and W. H. Hayley, were named as executors and trustees of the will, to serve without being required to give bond.

The will was probated by W. I. Booe, who qualified as executor. Hayley, the other named, being a nonresident of the State, did not qualify.

It was alleged that the attempted bequest to charitable purposes was void for indefiniteness and uncertainty, and that under a proper construction of the will the plaintiffs, upon the testator's death were vested with the absolute title to the whole estate, and that no trust for the control thereof was in law or fact created by the will, but it was only the purpose to create a trust for the distribution of such of the estate remaining for charitable purposes after the direction of the testator had been followed in the distribution of the estate to plaintiffs. That plaintiffs were the sole and only heirs at law of said testator, and that, the devise to charitable purposes being void for uncertainty, they are entitled to the property under the will and as heirs at law of the said testator.

It was alleged further that the other defendants, naming them, were related in some degree, unknown to plaintiffs, to the testator; that the estate was an ancestral one, inherited by the testator from his father, and prayed a construction of the will and a determination of the rights of all the parties thereunder, and that the executor be discharged and directed to surrender the property to plaintiffs as the owners thereof.

The executor filed a separate answer to the complaint, admitting the death of the testator, as alleged, the making and probating of the will and his qualification as executor, also that the estate was acquired by the testator from his father; denied that the plaintiffs were the sole and only heirs at law of the testator, and that they were entitled, either in law or in fact, to the whole estate; suggested that the devise for charitable purposes might be void for uncertainty, the necessity for a full adjudication and determination of the rights and interests arising, or attempted to be created, under the will, and that the Attorney General be made a party to represent the interest devised for charitable purposes, and further "that a true and proper construction of said will is that it creates a legal and valid trust; that the plaintiffs herein, Carrie and Bennie Vinson, are seized of the beneficial or equitable title in and to all of said property and the trustee of the legal title for the purpose of carrying out the provisions and purposes of said trust; that the said plaintiffs are restricted and limited in the use of said property to the sum of $1,200 per annum, so long as they shall live; that this defendant is, by reason of his executorship, now the trustee with power to appoint his successor; that when such successor in trust is appointed and qualified the legal title will vest in him as such trustee for the purposes of said trust; that at the death of the plaintiffs and the termination of said trust the remainder of said property may pass to the heirs of these plaintiffs or to such persons as the plaintiffs may designate by such means and mode of conveyance not inconsistent with their estate and the rights given them by the terms of said will."

Prayer that his construction of the will be adopted by the court, for costs and other relief.

The testimony shows that Carrie Vinson was a sister of the testator, 45 years of age, and that her daughter, Bennie

Vinson, was adult; that during the testator's life he paid their living expenses under the direction contained in his father's will, conveying to him virtually the estate devised herein. That they have no source of income, except such as may be received from the estate of the testator, and they are the nearest surviving relatives and next of kin of the testator.

The court decreed: "That the true and correct construction of the will is that the alleged bequest for charitable purposes is void because the same. is vague, indefinite and uncertain, and that the said plaintiffs, Carrie Vinson, and her daughter, Bennie Vinson, take the property, real, personal and mixed, belonging to the estate of the said Howard Beine, deceased, absolutely and in fee simple absolute, with the power and right of alienation and free from interference or control of the said W. I. Booe, as executor of the estate of Howard Beine, deceased, or as trustee thereof, or any of the other defendants in this suit."

The executor appealed from the decree.

*W. A. Leach,* for appellant.

1.   The demurrer should have been  sustained, since the complaint does not state facts sufficient to give a court of chancery jurisdiction. Equity will not lend its aid merely to construe a will. No equitable rights or estates are sought to be determined. 70 Ark. 432; 80 Ark. 1; 97 Ark. 588.

2.   The cardinal rule in construing wills is to arrive at the intent of the testator, and if that intent can be clearly ascertained, and is not contrary to some positive rule of law, it must prevail. And for the purposes of such construction not only is the instrument to be considered as an entirety, but the question is to be settled, "What did the testator mean by the words he actually used?" The manifest intention, as appears by the proof in this case, was to provide for appellees' support while they lived, even if it required the entire estate to do so, and, in order to make certain the execution of this purpose, he provided that it should be held in trust. 41 Ark. 64; 2 Pet. (U. S.) 370; 6 Pet. (U. S.) 68; 18 Ala. 242; 7 Ann. Cases, 948; Page on Wills, § § 460, 461; 90 Ark. 152; 13 Ark. 513; 31 Ark. 580; 3 Pet. (U. S.) 346; 105 Mich. 718.

The clause of the will, construction of which is asked, expresses but "one consistent thought, and every part of it

is necessary to do so, and must be so construed." The unmistakable purpose was to vest the entire property in a trustee for the sole purpose of paying over to the plaintiffs the annual stated sum while they lived, and at their death whatever was left of the estate to go to charitable purposes. 95 Ark. 333; 187 N. Y. 400; 10 Ann. Cases, 172; 74 Kan. 751. Conceding that the bequest of the residue of the estate to "charitable purposes" is void for uncertainty, that portion of the will can be disregarded without doing violence to the intent and dominant purpose of the testator. 216 Ill. 236; 3 Ann. Cases, 396; *Id.* 950. See also 59 Pa. 393; 2 Perry on Trusts, (6 ed.) 633, and cases cited in note.

*Joe T. Robinson, T. C. Trimble, F. E. Brown* and *Mehaffy, Reid & Mehaffy,* for appellees.

1. Equity jurisdiction has never been denied where an executor or trustee or *cestui que trust* has applied to give a "doubtful or disputed clause" in a will construction to insure a correct administration of the power conferred by a will. In this case a trust exists by virtue of the executorship, and a special express trust is at least attempted to be created with reference to both real and personal property, and the executor directed to nominate his successor. 3 Pomeroy, Eq. Jur., § 1156; 34 Barb. 106; 88 N. Y. 469.

2. The limitation over for "charitable purposes" is void. 89 Ark. 596; 14 L. R. A. (N. S.) 49. "When a bequest to a charitable use is too vague and indefinite to be carried into execution, it is void, and the subject of the trust is undisposed of and the benefit thereof results to the next of kin." 5 Carr. & J. 392; 9 Am. Dec. 572; 50 Conn. 501; 47 Am. Rep. 69; 35 Ind. 198, 9 Am. Rep. 690; 61 Mo. 592; 1 Russ & M. 232. See also 16 N. C. 276; 18 Am. Dec. 587; 2 W. Va. 310; 2 Ia. 315; 37 Tenn. 255; 88 Tenn. 637. The power of a testator to create a "spendthrift trust," that is, limit his bounty by means of a trust, so that it shall not be liable to the debts, control or engagements of the beneficiary, is recognized as valid except when annexed to a legal title in fee. 96 Mo. 439. But such a trust must rest upon the clear intent of the donor. 88 Pa. St. 276. The presumption is that such a trust is not intended unless express words to that effect are set forth, or a clear and undoubted intention to that end is manifested in

the will.   133 S. W. 160, 164.   See also 100 Md. 39, 59 Atl. 194; 149 Mass. 307, 21 N. E. 376.

3.   The words, "all my estate, real, personal and mixed, I give and bequeath to my aunt, Mrs. Carrie Vinson, and her daughter, Bennie Vinson," are entirely sufficient to carry the fee in a testamentary devise.   49 Ark. 367.   Wills are construed so as to avoid intestacy and to carry into effect the intention of the testator.   130 N. W. 414; 94 N. E. 980; 249 Ill. 606; 93 N. E. 1061; 95 Id. 243.   The law favors that construction of a will which vests the estate at the earliest possible moment.   135 S. W. 396; 122 N. Y. S. 718; 133 App. Div. 357; 75 Atl. 734; 94 N. E. 42; 135 S. W. 396; 94 N. E. 42; 81 Ark. 481.

4.   When all those who have the entire legal beneficial interest agree to dispose of the property in a particular manner, courts will give effect to their agreements.   2 Perry on Trusts, (2 ed.) art. 920; 75 Pac. 566; 142 Cal. 15; 100 Am. St. 99; 97 Pa. 316; 197 Pac. 291; 33 S. E. 616; 189 Mass. 108, etc.; 15 N. E. 786, 789; 47 Atl. 238; 53 Id. 593.

KIRBY, J., (after stating the facts).   It is contended, first, that the court was without jurisdiction of the suit, it being one only by the heirs to construe the will of a testator.

This would be correct if no trust were attempted to be created or involved under the terms of the will.   Our court has frequently approved this statement of the law, that the "special equitable jurisdiction to construe wills is simply an incident to the general jurisdiction over trusts, and that a court of equity will never entertain a suit brought solely for the purpose of interpreting the provisions of a will without further relief, and will never exercise a power to interpret a will which only deals with and disposes of a purely legal estate or interests and which makes no attempt to create a trust relation with respect to the property donated."   3 Pomeroy's Equity Jur. 1156; *Head* v. *Phillips*, 70 Ark. 432;   *Frank* v. *Frank*, 88 Ark. 1; *Williamson* v. *Grider*, 97 Ark. 588; *Hyde's Executors* v. *Hyde*, 53 Atl. 593.

If, under the terms of the will, it be doubtful what the rights and duties of the trustee are, he can resort to equity for a proper construction and interpretation of the will, and certainly those interested under its terms in the proper definition and limitation of the trust and enforcement thereof may come

to such court for like relief. It is doubtful by the terms of this will what the rights of appellants are in the testator's estate, as well as the rights and powers of the trustee in relation thereto under the trust created or attempted to be created by its terms, and the court had jurisdiction to determine it.

The devise and bequest to charity leaves the remainder of the estate in general terms to "be used for charitable purposes," without fixing upon any special object or indicating any plan or scheme for carrying out the purpose or prescribing any method or leaving it to the discretion of any one to be appointed to select the beneficiaries, and it is so generally vague, indefinite and uncertain as not to admit of judicial administration, and is void and must fail. *Ingraham* v. *Sutherland*, 89 Ark. 596; *Hadley* v. *Forsee*, 14 L. R. A. (N. S.) 49, and authorities in division 7 of note.

It is next contended by appellant that it was the intention of the testator to provide an income for appellees for life, the collection of which could not be anticipated or disposed of by them, and by appellees that, the limitation over in the provision for charitable purposes being void, the entire estate vested in them.

Having held that the limitation over of the estate for charitable purposes is void, it now becomes necessary to construe said clause of the will, without regard to such provision.

The purpose of construction of a will is to ascertain the intention of the testator from the language used as it appears from consideration of the entire instrument, and, when such intention is ascertained, it must prevail if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will. *Fitzhugh* v. *Hubbard*, 41 Ark. 64; *Gregory* v. *Welch*, 90 Ark. 152; *Cockrill* v. *Armstrong*, 31 Ark. 580; *Smith* v. *Bell*, 6 Pet. (U. S.) 68.

The language here is: "All my estate, real, personal and mixed, I give and bequeath to my aunt, Mrs. Carrie Vinson, and her daughter, Bennie Vinson, subject to the following conditions and bequests: The property, real and personal, must be so held in trust by some trust company or responsible individual, who shall be named by my executors and trustees, that Mrs. Vinson and Bennie shall not receive more than $1,200 per annum for the maintenance of both of them as

long as they shall live; at their death it is my desire that what is left, if anything, be used for charitable purposes."

In clause four of the will appellant and W. H. Hayley are named as executors. There is nothing else and no other provision of the will that will assist in the construction of this. If the first part of the sentence had been used alone, without the words, "subject to the following conditions and bequests," etc., it would have resulted in conveying the whole interest and estate of the testator to Carrie Vinson and her daughter, Bennie Vinson, absolutely, as tenants in common, to deal with as their own, without restriction or limitation. But the sentence continues: "The property, real and personal, must be so held in trust by some trust company or responsible individual, who shall be named by my executors and trustees, that Mrs. Vinson and Bennie shall not receive more than $1,200 per annum for the maintenance of both of them as long as they shall live," and the executor insists that from this it is apparent that it was the testator's intention to put all of said property in the hands of a trustee, to be named by the executor, and held in trust, at least for the joint lives of the legatees, if not for the entire lives of each of them, and thereafter disposed of by will or to their heirs in accordance with the statutes of descent and distribution.

It was his evident purpose to provide at least such income for the maintenance of the legatees for the time specified, for the last of the sentence shows that at their death "what is left, if anything, be used for charitable purposes," indicating a desire only that what remained of the estate, after the distribution to appellees, if anything there was, should be diverted to another purpose.

It might be contended that, since the estate was of the value of $75,000, and known to be so by the testator, in making provision for the maintenance of appellees and providing that no more than $1,200 per annum should be received by them, he must have known the income derived from it, if no more than the legal rate of interest was produced, would be nearly four times the amount of the charge against it, and that therefore it was his intention to create a fund for distribution to charitable purposes.

There is also some ground for appellant's contention

that, since the income from the estate would usually be greatly in excess of the expenditures directed for the maintenance of appellees, it was the testator's intention, in saying it "must be so held in trust" that "Mrs. Vinson and Bennie shall not receive more than $1,200 per annum," they should not have in any event for that purpose more than said sum, and appellant attempts to account for such intention upon the theory that appellees were without business experience, and known by him to be so, and that it was the testator's purpose to put the estate beyond their control and protect them against probable incapacity and improvidence, that it was the intention to create what is called a "spendthrift trust."

In *Wenzel* v. *Powder*, 100 Md. 39, 59 Atl. 195, 108 Am. St. Rep. 380, the court, after reciting the English rule, said:

"But in this country the Supreme Court of the United States, the court of last resort in some States, and this court, have, after full consideration, determined that the power of alienation is not a necessary incident to an equitable estate for life, and that the owner of the property may so dispose of it as to secure the enjoyment by the beneficiary without making it alienable by him or liable for his debts."

The American rule is likewise given in *Heaton* v. *Dixon*, 133 S. W. 162, citing *Nichols* v. *Eaton*, 91 U. S. 716, and numerous other cases. See also Perry on Trusts, § 386a.

In *Heaton* v. *Dixon, supra*, the court held: "A mere direction that 'my wife and my children and their heirs shall receive quarterly from my executor one-fifth each from the net income of my real estate' is not sufficient to signify an intention to create a spendthrift trust."

The court said, further: "It therefore appears that, though one may settle an estate in trust, with an equitable use in another for life, with a limitation against alienation and free from the claims of creditors, the presumption of the law is that he has not done so, unless either express words to that effect are set forth, or a clear and undoubted intention of the same is manifested in the will. If there are no express words in the will fixing a restraint against alienation and withholding the income from other creditors, other language

relied upon as reflecting such intention must import it to be clear and undoubted."

The words, "for support and maintenance," in an instrument creating a trust estate in favor of another for life alone or in themselves, have been held insufficient to manifest such clear and undoubted intention on the part of the testator or settler to restrain the equitable interest in the income from alienation or remove it from the reach of creditors, or to characterize it as a spendthrift trust.

Likewise, it has been determined that the income of an estate conveyed to the widow for life, "to her use and benefit—for her comfort and support," can not, by the use of such words, be withdrawn from creditors, and that they were without force as a limitation upon the absolute gift of the income from the estate. *Wenzel* v. *Powder, supra; Maynard* v. *Cleaves,* 149 Mass. 307, 21 N. E. 376; *Girard Life Ins. & Trust Co.* v. *Chambers,* 46 Pa. 485, 86 Am. Dec. 513.

Although it is intimated in *Honnett* v. *Williams,* 66 Ark. 153, that such a trust can not be created or exist in this State, the increasing weight of authority in America favors the contrary rule, and it is still unnecessary to determine the question, for there is no provision in the will attempting to place any restraint upon the alienation or disposition of the income for maintenance, nor any prohibition against it being seized by the creditors of the beneficiaries, and the case is in no respect analogous to those where a spendthrift trust has been sustained.

A testator is presumed to intend to dispose of his entire estate, and it is to be borne in mind in the construction of wills that they are to be so interpreted as to avoid partial intestacy, unless the language compels a different construction. *Northern Trust Co.* v. *Wheaton,* 249 Ill. 606, 94 N. E. 980; *Skinner* v. *Spann,* 93 N. E. 1061, 95 *Id.* 243; *Ironsides* v. *Ironsides,* 130 N. W. 414.

It is also a well established principle that the law favors the vesting of estates, and, in the absence of a contrary intention of the testator appearing from the will, the estate will vest at the time of his death, and, if a will is susceptible of a dual construction, by one of which the estate becomes vested and by the other it remains contingent, the construction

which vests the estate will be adopted. *Wilce* v. *Van Anden*, 94 N. E. 42; *Barker* v. *Barker*, 135 S. W. 396; *McKinley* v. *Martin*, 75 Atl. 734; *Van Denson* v. *Van Denson*, 122 N. Y. Supp. 718, 133 App. Div. 357.

It was the manifest intention of the testator, in directing that all the property should be placed in the hands of trustees, to permit his aunt and cousin, appellees, to enjoy, certainly for their maintenance, the amount of income designated during their lives, and, notwithstanding it was his further intention to provide a fund for distribution for charitable purposes thereafter, the unexpected has happened, such clause of the will being void for uncertainty. Nowhere is there anything expressed in the will to indicate that, if it had been known to the testator that the gift to charity would fail, he would not have been willing for appellees to have the absolute control and ownership of all the property given to them. Neither is there, as already said, any indication of an intention to place it beyond their control and disposition as a spendthrift trust; and appellees are *sui juris*, and are here requesting that the trust be terminated, and we see no reason why it should not be. Upon the testator's death, the right to the whole estate vested in appellees under the will, as tenants in common thereof; and since no one else has, at this time, any interest in the property, and they insist that it be delivered to them in its present condition, we are of opinion that it should be done.

If the executor, having authority to appoint a trustee, be regarded as having the power of one, there is no reason why the trust should not be declared at an end. And especially is this true as there are no further duties to be performed by him. 2 Perry on Trusts, § 920; *Wilce* v. *Van Anden*, 94 N. E. (Ill.) *supra; Badgett* v. *Keating*, 31 Ark. 409.

The decree is affirmed.