## WILLIAMS *v.* NORTON.

### Opinion delivered January 1, 1917.

1. WILLS—RIGHT TO SELL OR RENT LANDS—BEQUEST OF PROCEEDS—
   DESCENT OF THE FEE.—Deceased made a will appointing his two sons
   as executors, and giving them power to rent or sell his real estate,
   paying one-third of the proceeds to his widow, and two-thirds to his
   widowed daughter as long as she remained a widow. *Held*, the
   testator did not devise a fee simple estate in one-third of his property
   to his widow, nor a fee simple estate in two-thirds thereof to his
   widowed daughter.

2. WILLS—DEVISE OF LANDS—EXPRESS OR IMPLIED INTENTION—PRE-
   SUMPTION AGAINST PARTIAL INTESTACY.—In the absence of any
   language in a will which either expressly, or by necessary implication,
   carries the idea that the testator intended to devise the fee simple
   title to his lands to any one, the presumption against partial intestacy
   cannot be indulged.

3. WILLS—LANDS OF TESTATOR—INTENTION—RIGHT OF HEIR.—The heirs
   will inherit the lands of the deceased unless the same are given to
   others.

    Appeal from Hempstead Chancery Court; *James
D. Shaver*, Chancellor; reversed.

#### STATEMENT BY THE COURT.

    This suit was instituted by the appellees against
the appellants for partition of certain lands in Hemp-
stead county. The cause was heard upon an agreed
statement of facts, substantially as follows:

    A. B. Williams died in 1895. He owned some
4,200 acres of land and certain personal property. He
was survived by R. B. Williams, John E. Williams,
Hugh B. Williams, Nal Williams, Ora Field Ratcliff
and Kate Old, his children, and Annie G. Williams, his
widow.

    E. C. Old was adjudged a bankrupt on July 29,
1912, and N. B. Norton is the trustee in bankruptcy

of his estate and was authorized to bring this suit. All parties to the suit are of age.

Mrs. Kate Old died intestate in 1905, leaving the following children: E. C. Old, Oscar D. Old, Thos. E. Old, and Katherine Old McRae. The other children of A. B. Williams are all dead, leaving children surviving them. The widow of A. B. Williams is still living, and has, since his death, intermarried with C. O. Steel.

The heirs of Mrs. Kate Old claim to own the land which belonged to the estate of their grandfather, A. B. Williams, and which by this suit are sought to be partitioned under his will, which was duly probated.

By the second and third paragraphs of the will he gave to his wife his homestead in the town of Washington and certain other lands, specifically designated, "to have, hold, use and enjoy, with the rents and profits thereof for and during her natural life;" and also his "household and kitchen furniture, including pictures, silverware, and other like things," except the piano.

In other clauses of the will he also bequeathed to his wife certain other articles of personal property (naming them), and $100 out of any money that he might have on hand at the time of his death.

He gave to his grandson, Elias Carruth Old, his gold watch. He gave his law library to his son, R. B. Williams, in payment of $160 borrowed from him.

The twelfth and thirteenth paragraphs of the will read as follows:

"Twelfth: I hereby nominate and appoint my sons, R. B. Williams and Nal Williams, the executors of this my last will, with all the power I can give them by law to settle my affairs of my estate. I give them full power to collect, compromise, adjust, compound and settle all and any debts due me the same as if I were living. I wish them to collect all debts due me which may be collected and to pay all just debts which I may owe. I do not want them to be required to give any security on their bond for the execution of this

will or to be required to do anything in the probate court except probating this will. I give them power to rent, lease or sell any lands except those reserved in the second item of this will. I wish them to sell any of my lands on such terms as they may think right and to take notes for the same and give bonds for title to convey them with full and plenary powers in the disposition of my lands. In case of trouble about titles or possession of any lands of mine, I give them full power to compromise and adjust such differences as fully and completely as I could do if living."

"Thirteenth: I hereby wish the proceeds of the sale of my lands which my executors may sell to be disposed of as follows: One-third thereof to my wife, Annie G., so long as she lives, and the other two-thirds to my daughter, Kate Old, for the use of herself and children so long as she may remain a widow. She is now destitute with a family of children, and more in need than any other of my children."

In the fourteenth paragraph he remitted any debts that his children might owe him, and he gave to each of them the sum of $1.00. This paragraph concludes as follows:

"If I have made any omissions in the directions about my bequests herein, my said executors are fully empowered to supply them. My son, R. B. Williams and I own some land jointly as tenants in common, which I wish disposed of as I have directed about my lands held in my own right. Any residuum not provided for herein I wish to be given to my daughter, Kate Old."

The court found that Mrs. Annie G. Steel, formerly Mrs. A. B. Williams, is the owner in fee simple of an undivided one-third share of all lands belonging to the estate of A. B. Williams, deceased, and that the heirs of Mrs. Kate Old are the owners in fee of the remaining undivided two-thirds of those lands, and found that such lands could not be partitioned, and therefore entered a decree ordering that the lands be sold and the proceeds be divided in accordance with the finding,

after paying the taxes that were a first charge upon the lands.

Appellants have appealed from the decree in favor of the heirs of Mrs. Kate Old, and the appellees appeal from the decree in favor of Mrs. Annie G. Steel, formerly the widow of A. B. Williams.

*Etter & Monroe,* for appellants.

1. All rules of construction are designed to ascertain and give effect to the intention of the testator, and that intention must be ascertained by the wording of the will as applied to the subject matter under the surrounding circumstances. 105 Ark. 558; 12 L. R. A. (N. S.) 661; Gardner on Wills, 366.

2. It was not the intention to give Mrs. Old or her heirs all his property after the widow and Mrs. Old had been provided for. It is plain that he intended to provide for Mrs. Old and her children so long as she remained a widow, and if any was left let it go where the law casts it. Under the *residuum* clause Mrs. Old only was entitled to any personal property overlooked and not otherwise provided for in the will. 56 Am. DeC. 451; 112 Ark. 533. An heir cannot be disinherited by implication. 56 Am. Dec. 451. Intent to disinherit is essential. *Ib.* See also *Ib.* 518; 113 Ark. 500; 1 New Eng. Rep. 699; 78 Me. 142; 9 L. R. A. 575, note; 50 Ill. 67; 17 *Id.* 288; 28 L. R. A. (N. S.) 1100, note. The words "so long as she remains a widow" imply a continuance of the estate during widowhood and no longer. 152 Mass. 523; 170 *Id.* 506; 49 N. E. 916; 28 L. R. A. (N. S.) 1102, note.

3. The intention of the testator must prevail. 104 Ark. 445; 111 *Id.* 54; 12 L. R. A. (N. S.) 661; 105 Ark. 558. The executors under the will hold the fee in trust for the heirs of the testator, after providing for Mrs. Old so long as she remained a widow, then after her death or marriage the estate would go to all the heirs, subject to the widow's dower. 53 Ark. 365, and cases *supra.*

*J. W. Morrow*, for appellee.

1. The lands in controversy were devised in fee to Kate Old under the *residuum* clause of the will. 40 Cyc. 1567 (11); 131 N. Y. 227; 7 Words & Phr. 6170. The gift to the executors was a power and conveyed no property. 40 Cyc. 1820-3; Sugden on Powers (8 Ed.) 112. Title does not pass to the executors unless there are express words to that effect. *Ib.* 114; 31 Cyc. 1038, 1088, 1091 (3 A. & B.); 68 Ark. 409.

2. The *residuum* clause carried the real estate. It vested in Mrs. Old subject to be defeated by the execution of the power. 5 Am. & E. Am. Cas. 805 and note, p. 810. Where the power is not executed the real estate passes to the residuary legatee. 26 Pittsb. Leg. J. (N. S.) 105; 82 Atl. 189; 7 A. & E. Ann. Cases, 948; 40 Cyc. 1668 (111), 1682 (C.); 31 Cyc. 1091; 91 Mo. 836; 14 Am. St. 664; 40 Cyc. 1834, § 4, 1768 (c). The lands being undisposed of passed by the *residuum* clause to Kate Old. Authorities *supra;* 40 Cyc. 1580; 131 N. Y. 227.

3. The presumption is that the testator disposed of his whole estate. 2 Redfield on Wills, 235; 90 Ark. 152; 104 *Id.* 439; 105 *Id.* 558.

4. Under clause 13 of the will the widow was not entitled to one-third of the proceeds of the lands. The language is not sufficient to create a trust in her. 40 Cyc. 1727 (L.) 1749 (11). A mere privilege or discretion is not sufficient. *Ib.*

WOOD, J. (after stating the facts). In *Finlay* v. *King's Lessee*, 3 Peters, 346, Ch. J. Marshall said: "The intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail."

Our own court has reiterated this rule in almost every case in which the construction of a will is involved. In the very latest case, *Harrington* v. *Cooper*, 126 Ark. 53, the court, said: "In construing the pro-

visions of a will the intention of the maker is first to be ascertained, and, when not at variance with recognized rules of law, must govern. The intention of the testator must be gathered from all parts of the will and such construction be given as will, if possible, give force and meaning to every clause of the will." See, also, *Little* v. *McGuire*, 113 Ark. 497; *Archer* v. *Palmer*, 112 Ark. 527; *Webb* v. *Webb*, 111 Ark. 54; *Galloway* v. *Darby*, 105 Ark. 558; *Parker* v. *Wilson*, 98 Ark. 553.

When the language of this entire will is considered we do not discover any purpose upon the part of the testator, A. B. Williams, to devise his real estate in fee simple to anyone. In the 12th paragraph of his will he gives his executors "full and plenary powers" in the disposition of his lands; that is, "to rent, lease or sell any of his lands," on such terms as they might think right, except his homestead and other lands, which he specifically designates, that were given to his wife, Annie G. Williams, "to hold, use and enjoy during her natural life." So far as his other real estate was concerned, the testator intended that his two sons, his executors, in whose "business capacity and integrity he had unlimited confidence," should dispose of the same in any manner they saw proper. If they rented the lands the rental proceeds were to be divided equally between his wife and his widowed daughter, Mrs. Kate Old, and if his executors sold any of the lands the proceeds of the sale were to be divided between his wife as long as she lived and Mrs. Kate Old as long as she remained a widow, one-third going to the wife and two-thirds to Mrs. Old.

In the first clause of his will the testator states that "it was not likely that he would have any ready money on hand at the time of his death," and that his wife would "be destitute of any ready money and without any certain income." In another clause of his will he states that his daughter, Kate Old, was destitute, with a family of children, and more in need than any other one of his children. To certain of his

children, whom he names, he gives the nominal sum of $1.00.

These expressions of solicitude for his wife and widowed daughter show that he regarded them as more dependent upon him than any of the other beneficiaries named in the will, and it was his evident intention to make final disposition of all of the personal property of which he might die possessed by specific bequests, and if anything was omitted of such personal property that his executors should have full power to supply the same. There is not a single word in the will that indicates a purpose upon the part of the testator to devise the real estate of which he died seized. He does not even vest the title of such real estate in his executors as his trustees with power to sell. The whole will shows that the purpose of the testator was to have his estate wound up in such way that his debts should be paid and that his wife, as long as she lived, and his widowed daughter and her children, as long as she remained a widow, should be provided for out of the rents and the proceeds of any sales that might be made of his real estate. This was the dominant purpose of those paragraphs of the will giving the executors power to rent, lease or sell any of his lands (except those reserved in the second paragraph) upon such terms as they might think right, and designating the manner in which the proceeds should be divided.

The testator, in different paragraphs of his will, had bequeathed certain designated articles of personal property to his wife, and other designated articles to certain of his children. For instance, to his son and law partner his library, with the understanding that it should pay a debt that he owed this son; and a piano to his daughter, with the understanding that the debt he owed her also should be cancelled. While there is no testimony in the record as to the value of these articles of personal property, they were doubtless worth fully as much or more than the debts he owed these children, and he made these specific bequests to his wife and the particular children named no doubt

for the reason that, under the circumstances, he deemed such bequests most appropriate for them. The whole will shows that the testator had no intention of favoring one child above another in the bequests of personal property, but it does show that, so far as the proceeds to be derived from the rent or sale of his real estate, he intended that Mrs. Old should be preferred to them on account of her necessities.

After making bequests of various designated items of personal property, the will shows that the testator thought there might be some omissions, and that if he had omitted any items these should go to his daughter. After the testator had made his will he added a codicil, bequeathing to his daughter, Ora Field Ratcliff, the set of books known as Encyclopedia Brittanica. This codicil shows that he had omitted to mention (in the will proper) and to make bequest specifically of all of his personal property. The clause "any residuum not provided for herein I wish to be given to my daughter, Mrs. Kate Old," also shows that the testator had in mind that there might be certain personal property that he had not specifically bequeathed to any of the other beneficiaries, and such as he had not thus disposed of he wished to give to Mrs. Old. The words "any residuum not provided for herein" could not have referred to his lands, and were obviously not intended by the testator as a devise of lands to his daughter, Mrs. Old. The testator had made the only disposition of the lands that he desired to make, by conferring upon his executors unlimited power to sell or lease the same. If the testator had intended to devise the lands to Mrs. Old and to vest a fee simple title in her to the exclusion of the other heirs, being a lawyer of ability, as the agreed statement of facts shows that he was, he doubtless would have employed more appropriate language. It would be a strained construction of the language used, in connection with all the other provisions of the will, to hold that it vested in Mrs. Old a fee simple title to the lands mentioned in the petition in the

suit for partition. The language of the will clearly indicates that it was the purpose of the testator that his lands should be sold by his executors, if necessary, for the support of his widow during her life and for the support of Mrs. Old and her children as long as she remained a widow. But certainly there is no language in the will that would justify the conclusion that the testator intended not only to provide for Mrs. Kate Old and her children as long as she remained a widow, but also to vest in her the fee simple title.

Being a lawyer of ability, and therefore familiar with the technical terms that are used to devise real estate in fee simple, it is inconceivable that A. B. Williams would have used the vague terms in the residuum clause quoted if he had intended to devise his lands in fee simple to Mrs. Old. If such had been his intention he doubtless, in express terms, would have said that if there remained any real estate after the executors had carried out the purposes of his will as expressed in other paragraphs, that such residuum be devised in fee simple to Mrs. Old. The language of the will, as above stated, excludes any such intention. In the absence of any language in the will which either expressly or by necessary implication carries the idea that he intended to devise the fee simple title to any one, the presumption against partial intestacy so far as the lands are concerned can not be indulged.

In the old English case of *Denn* v. *Gaskin*, 2 Cowp. 657 (1777), Lord Mansfield declared, that "though the intention is ever so apparent, the heir at law must of course inherit unless the estate is given to somebody else." That rule has never been departed from so far as we are advised, either in England or in this country. The reason for the doctrine is that courts cannot make wills for parties and by so doing annul the laws of descent and distribution.

*Schauber* v. *Jackson*, 2 Wend. 13, is one of the leading cases in this country, and where the provisions of the will were somewhat similar to the one here under review, only the language of the will was much stronger to

raise a devise by implication to the exclusion of the heir at law than is the language of the will in the case at bar. The court for the correction of errors there held, "if there is not sufficient in a will to take the case out of the rule of law that all of the estate which is not legally and sufficiently devised to some other person must go to the heir, the heir will take whatever may have been the intention of the testator."

Following this decision, the Supreme Courts of Virginia and Georgia, also in cases where there is an exhaustive review of the authorities, held that "an heir can be disinherited only by express devise or necessary implication, so strong that a contrary intention cannot be supposed; that the heir cannot be disinherited unless the estate is given to somebody else." *Boiseau* v. *Aldridges*, 5 Leigh's Rep. 222, 27 Am. Dec. 590; *Wright* v. *Hicks*, 12 Ga. 155, 56 Am. Dec. 451.

In the last above case it was held (quoting syllabus): "Intent to disinherit heir is essential to raise an estate by implication, the presumption being, in the absence of plain words in the will to the contrary, that the testator intended that his property should go in the legal channel of descent." See, also, *Doe ex dem. Clendenning* v. *Lanius*, 3 Ind. 441, 56 Am. Dec. 518.

Applying the doctrine of the above cases to the will under review, there is certainly no language in it that either expressly or by necessary implication overcomes the presumption that A. B. Williams intended that his real estate, subject to the uses to which he had subjected it under the provisions of his will, should go in the legal channel of descent. To hold otherwise would be to make a will for the testator, and one too that would create an unjust discrimination in favor of the heirs of Mrs. E. C. Old as against the other heirs of the children of A. B. Williams. To our minds, after a careful reading of this will, it never entered the mind of A. B. Williams, by the provisions of his will, to deny any of his children their rights to an equal inheritance in such lands as might remain after the purposes of the support and maintenance of his widow

and widowed daughter, as expressed in his will, had been carried out. To construe this will as favoring one set of grandchildren to the exclusion of another we believe would do violence to the intention of their grandfather, as gathered from a consideration of the will as a whole.

The court erred, therefore, in decreeing the heirs of Mrs. Old two-thirds of the proceeds derived from the sale of the lands ordered by it. The court also erred in awarding to the widow absolutely one-third of the proceeds of the sale of these lands. The widow, under the law, was entitled to one-third interest in these lands for life as her dower. The testator did not make any provision for the widow in his will in lieu of dower. Upon a sale of the lands in partition the widow will be entitled to one-third of the proceeds, not absolutely, but only to the benefit of the use of such proceeds as long as she lives.

The decree is, therefore, reversed, and the cause will be remanded for further proceedings according to law and not inconsistent with this opinion.