WALLACE *v.* WALLACE.

Opinion delivered February 18, 1929.

U. A. *Gentry* and *Feazel & Steel,* for appellant.

W. C. *Rodgers,* for appellee.

McHANEY, J. Josiah H. Wallace, celibate, late of Saratoga, Howard County, Arkansas, died testate, his will, omitting formal parts, and numbering the several paragraphs for convenient reference, being as follows:

"(1). I make the following special bequests: To my business partner, W. L. Ellis, Saratoga, Arkansas, and who has served me faithfully and efficiently for many years, and who is my beloved kinsman, I give and bequeath ten thousand dollars in cash and also the following real property: Lots 7 and 8, in block 11, in the town of Saratoga, Arkansas, being the lots on which the residence is located in which said Ellis resides. Also the storehouse and lots in Saratoga, Arkansas, Howard County, being a part of section 33, township 11, range 27 west, in said county, where the present storehouse has been situated since 1881, and known now as the W. L. Ellis & Co.'s store. (2). I also give and bequeath to my nephew, A. T. Wallace, to have in addition to his share in my estate, the following lands: The north half of the southwest quarter of section 17, township 12 south, range

27 west, and known as the Miller Place. Also the northeast quarter section 18, township 12 south, range 27 west, known as the Moore Place, containing 120 acres, more or less, situated in Hempstead County, Arkansas. (3). I also make the following bequest to Joe Duncan, Saratoga, Arkansas: Five thousand dollars in cash; to Hugh L. Toland, Ashdown, Arkansas, five thousand dollars cash; also to Geo. H. Bell, Nashville, Arkansas, five thousand dollars in cash; also to R. E. Major of Monroe, La., five thousand dollars in cash. (4). It is my desire and I do hereby will that my two plantations situated in Howard County, Arkansas, and known as the McDaniel and Block farm, be held intact and in trust for my legal heirs for the term of twenty-five years after my death. The manager or superintendent of said farm is to use my office or residence in Saratoga, Arkansas, as a residence or business office, the net proceeds of the rental of said farm to go to my legal heirs each year. After the twenty-five years have expired, said lands may be sold or divided for the benefit of my said heirs. (5). To fulfill a promise made to my beloved brother, D. P. Wallace, deceased, I hereby make his widow, Mrs. Sallie Wallace, of Nashville, Arkansas, one of my legal heirs, provided she is living at my death. (6). To my beloved old friend and kinsman, James W. Ellis, of Ozan, Arkansas, I give one thousand dollars in money, and to his wife, my beloved cousin, Carrie May Ellis, I give the like sum of money, provided they or either of them is living at the time of my death. (7). I hereby nominate and appoint my said kinsman and partner, W. L. Ellis, as the executor of this will and testament, and authorize him to appoint the overseer or manager of my two plantations, the McDaniel farm and the Block farm, in Howard County, Arkansas.''

The above will was duly admitted to probate. The testator's collateral heirs consisted of his brothers and sisters living at his death, W. B. Wallace, W. P. Wallace, Alice M. Wallace, Lelia A. Roach and Pattie F. Weatherford, Mrs. Sallie Wallace, widow of D. P. Wallace, deceased, mentioned in paragraph 5 of the will, by which

she was made one of the testator's legal heirs. W. P. Wallace conveyed all his interest in the land in question to the other heirs above named, and has no interest in this controversy. Appellant is the son of said W. P. Wallace, and a nephew of the testator. Appellees are all the heirs, except said W. P. Wallace.

Appellant brought this action to have the will construed. He alleged that he was entitled to a one-sixth interest in the proceeds of a sale of a portion of the land, mentioned in paragraph 4 of the will, to the Arkansas Portland Cement Company; that, by agreement with appellees, the portion of the sale price claimed by him had been deposited in escrow pending a determination of his rights, and that he had executed a deed to the purchaser. He prayed that the money in escrow be decreed his property, or, if it be held that he is not entitled thereto, that it was the meaning and intention of the testator, as expressed in paragraph 4 of the will, that the McDaniel place and the Block farm be held intact and in trust for 25 years after the death of the testator, and that said property be decreed to belong to those parties who may be the testator's legal heirs at that time and not to those who are the admitted legal heirs at this time. A demurrer to this complaint was interposed and sustained. Appellant declined to plead further, and his complaint was dismissed for want of equity.

Counsel for appellant say that only two questions are involved in this appeal. First, did appellant have the right to maintain this action? and second, did paragraph 4 of the will create an enforceable trust that cannot be terminated until the expiration of twenty-five years? They say that a negative answer to the first question would remove the necessity for an answer to the second. However, we think the second question must be answered, even though the first be decided against appellant, as it is important to the appellees to know whether they have title to the land mentioned in paragraph 4 of the will.

Appellant contends that he is a contingent remainderman, and that, under the authority of the case of *Watson*

v. *Wolff-Goldman Realty Co.*, 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540; *Horsley* v. *Hilburn,* 44 Ark. 459; and *Tatum* v. *Tatum*, 174 Ark. 110, 295 S. W. 720, 53 A. L. R. 306, he had the right to maintain this action, having a contingent interest in the lands mentioned in § 4 of the will. In that section the testator said: "It is my desire and I do hereby will that my two plantations situated in Howard County, Arkansas, and known as the McDaniel and Block farm, be held intact and in trust for my legal heirs for the term of twenty-five years after my death. The manager or superintendent of said farm is to use my office or residence in Saratoga, Arkansas, as a residence or business office, the net proceeds of the rental of said farm to go to my legal heirs each year. After the twenty-five years have expired, said lands may be sold or divided for the benefit of my said heirs." It will be noticed that the testator used the term "my legal heirs" in two places, and at the end of the paragraph he used the term "my said heirs," which manifestly refers to the term theretofore used, "my legal heirs." The complaint charges that the testator's "legal heirs" were those persons heretofore named, brothers and sisters of the testator, including the widow of one brother, who was made a legal heir by the terms of § 5 of the will. Nowhere in the will is appellant referred to except in paragraph 2, where the testator said: "I also give and bequeath to my nephew, A. T. Wallace, to have in addition to his share in my estate, the following lands," describing them.

In a strict legal sense, a living person has no heirs. As said by this court in *Gregley* v. *Jackson*, 38 Ark. 487: "Laws of inheritance rest upon public policy, and, during the life of the person owning the property, may be changed at will. No one has a vested right to be the future heir of any person not already dead." * * * See also *Carter* v. *McNeal*, 86 Ark. 150, 110 S. W. 222.

In 29 C. J. 290 it is said: "In the strictly proper sense of the word, no one is an heir until after the death of the ancestor, and the word signifies one who has succeeded to a dead ancestor; it is used to express the rela-

tion of persons to some deceased ancestor, and cannot be applicable to one whose ancestor is living.''

Appellant, being the nephew of the testator and the son of W. P. Wallace, who conveyed his interest to the other legal heirs, would have no right to maintain this action unless, by proper construction of § 4 of the will, he is in fact a contingent remainderman.

In the recent case of *Hurst* v. *Hilderbrandt,* 178 Ark. 339, 10 S. W. (2d) 491, we said: ''It is a fundamental rule of construction of both deeds and wills to ascertain the intention the grantor had in mind, as to the course he desired his property to take, from the language used in the instrument, and to give effect to such intention, if it may be done without doing violence to the law.'' We further said in the same case: ''And it is also a rule that the law favors the early vesting of estates, and that, if a deed or a will is susceptible of a dual construction, by one of which the estate becomes vested and by the other it remains contingent, the former construction will be adopted.'' We there cited *Booe* v. *Vinson,* 104 Ark. 439, 149 S. W. 524, and *McCarroll* v. *Falls,* 129 Ark. 245, 149 S. W. 524. We quoted at some length from authorities as to the distinction between vested and contingent remainders. We shall not again quote those authorities in this opinion.

''A remainder,'' says Mr. Tiedeman, ''is therefore a future estate in lands, which is preceded and supported by a particular estate in possession which takes effect in possession immediately upon the determination of the prior estate, and which is created at the same time and by the same conveyance.'' Tiedeman on Real Property (3 ed.) § 296.

A remainder is a residue of an estate in land, depending upon a particular estate, and created together with the same. 2 Tho. Co. 126. After quoting the above definition, Professor Graves, in his notes on Real Property, § 173, commenting thereon, says: ''In order that there may be a remainder, there must be a particular estate upon which it may depend; hence, a freehold to commence *in*

*futuro* is no remainder, and is void at common law." There are two kinds of remainders, vested and contingent. Blackstone defines them as follows: "Vested remainders (or remainders executed, whereby a present interest passes to the party, though to be enjoyed in the future) are where the estate is invariably fixed, to remain to a determinate person after the particular estate is spent. * * * Contingent or executory remainders (whereby no present interest passes) are where the estate in remainder is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event." 2 Bl. Com. 168.

It is our opinion that paragraph 4 of the will does not create a remainder, either vested or contingent, because there is no particular estate in possession preceding and supporting it. The words, "it is my desire and I do hereby will," etc., are merely directory, the expression of a desire or wish, or by way of suggestion. The word "will" used therein is synonymous with the preceding word "desire," and means the same as if the testator had said "it is my desire and I do hereby wish," etc. These are precatory words, merely expressive of the testator's desire regarding such property, and do not amount to an affirmative command which the heirs are bound to obey. They are insufficient to create a trust. No trustee is named, but the executor is given power to appoint an overseer or manager. No directions are given as to what the overseer or manager shall do with reference to the planting and growing of crops, nor how the farm shall be managed or rented. Should the executor named in the will die or refuse to qualify, no power is given to anyone else to name the overseer or manager, and there has been no conveyance of the two farms mentioned to any overseer or manager or to the executor. The testator desired that his farms be held intact, and he merely expressed a wish that his heirs might see proper to do so. Of course, equity would not permit a trust to fail for want of a trustee, but here no trust has been created.

The testator undoubtedly intended that his brothers and sisters, living at the time of his death, together with Mrs. Sallie Wallace, should take the fee to the two farms mentioned in paragraph 4 of the will. He referred to them as "my legal heirs" and "my said heirs," and this is made certain by reference to paragraph 5 of the will, wherein he made Mrs. Sallie Wallace, widow of his deceased brother, D. P. Wallace, one of his "legal heirs, providing she is living at my death." She was made a legal heir and put in the same class with the others, solely on condition that she be living at his death. He intended by the will for her to share equally with his brothers and sisters, not only in the rents and profits from year to year if the land be held intact for the period of time suggested by him, but also in the fee.

In *Williams* v. *Norton,* 126 Ark. 503, 191 S. W. 34, this court said:

"In the old English case of *Denn* v. *Gaskin,* 2 Cowp. 657 (1777), Lord Mansfield declared, that 'though the intention is ever so apparent, the heirs at law must of course inherit unless the estate is given to somebody else.' That rule has never been departed from, so far as we are advised, either in England or in this country. The reason for the doctrine is that courts cannot make wills for parties and by so doing annul the laws of descent and distribution. The court in the same case quoted with approval from Virginia and Georgia cases, to the effect that "an heir can be disinherited only by express devise or necessary implication, so strong that a contrary intention cannot be supposed; that the heirs cannot be disinherited unless the estate is given to somebody else."

Quoting with approval from *Wright* v. *Hicks,* 12 Ga. 155 it is said: "Intent to disinherit the heir is essential to raise an estate by implication, the presumption being, in the absence of plain words in the will to the contrary, that the testator intended that his property should go in the legal channel of descent."

The Supreme Court of the United States, in *Wilkins* v. *Allen,* 18 How. 385, said: "Under the law the heirs

must take, unless they are disinherited by express words or necessary implication. Conjecture or uncertainty shall never disinherit him.''

Applying these rules to the paragraph of the will under consideration, we hold that there was no intention on the part of the testator expressed in the will to disinherit his ''legal heirs'' for a period of twenty-five years, or any other time.

This case is quite similar to that of *Black* v. *Bailey*, 142 Ark. 201, 218 S. W. 210. It was there held, among other things, that a will which provided that a trustee named in the will should hold the testator's property ''with full power and authority to handle, manage and control my estate as such trustee, as in his judgment may seem best'' for the use and benefit of his children, did not vest the legal title in the trustee. It was further held that the beneficiaries of the trust estate might terminate the trust created by the will, for the benefit of the estate, the beneficiaries all being *sui juris*. So here all the legal heirs are *sui juris*. The appellees are the sole legal heirs interested in this litigation. They are the persons solely interested in either the rents or profits or the fee, and with their consent the property may be sold and a good title conveyed by them.

We pretermit a discussion of the rule against perpetuities. Having reached the conclusion heretofore announced, it becomes unnecessary, even though a valid trust was otherwise created by § 4 of the will, for still it might be void as offending the rule against perpetuities.

Decree affirmed.