BLOOM *v.* STRAUSS.

Opinion delivered November 12, 1904.

1. WILL—WHEN TRUST CREATED.—When property is given to a parent, or a person *in loco parentis,* with no trust declared in terms, but with such directions for the maintenance of his family or children as enable the court clearly to infer an intention on the part of the donor that the property shall be held in trust for the purposes of the maintenance; the court will enforce the trust; otherwise the donee will take an absolute estate. (Page 60.)

2. SAME—CONSTRUCTION.—In the interpretation of wills, words expressing a desire, entreaty or recommendation as to the disposition of property for the benefit of the testator's children are to be construed to carry out the intention of the testator, as gathered from the whole will. In order to create a trust, it must appear that the words used were intended to be imperative; and when property is given absolutely and without restriction, a trust is not to be lightly imposed, upon mere words of recommendation and confidence. (Page 60.)

3. SAME.—A will provided as follows: "I will and bequeath to my wife, Hanchi Strauss, all my property, real, personal and mixed, of which I may die seized and possessed, with the right to sell and convey the two lots on Pullen street and one lot on Scull street for the purpose of supporting the family, and I desire that my said wife do not marry again, but live single with the children of my family and take care of them. I will and bequeath to my children all my estate, real, personal and mixed, to be divided among them equally after the death of my wife; but my said wife to have full control of everything during her life." *Held,* that the words "for the purpose of supporting the family" refer to and limit only the clause giving the right to sell the lots mentioned, and do not raise a trust in favor of the children as to the wife's life estate. (Page 61.)

4. SAME—WHEN TRUST NOT CREATED.—A testator, having children by two wives, left all his property to his second wife for her natural life, with remainder to his children, and authorized her to sell certain

lots for the purpose of supporting the family, and added: "I desire
that my wife do not marry again, but live single with the children
of my family and take care of them." At the time the will was exe-
cuted the children of the first wife had reached the age of self-sup-
port, while the children of the second wife were of tender years. The
total income of the property devised did not exceed $1,000 or $1,500.
*Held,* that the wife took an absolute estate for life in the property,
not burdened with any trust, unless one be necessary to carry into
effect that provision of the will that after her death the estate should
go to the testator's children, or unless she should sell the lots
mentioned for the support of the family. (Page 63.)

5. SAME—PROPERTY CONVEYED.—A will conveying to the testator's widow
all the property of which he "died seized or possessed" will not convey
fire insurance money received by the administratrix for property of
the estate insured by her out of the funds of the estate after the
testator's death and subsequently destroyed by fire. (Page 65.)

Appeal from Jefferson Chancery Court.

JOHN M. ELLIOTT, Chancellor.

Reversed.

### STATEMENT BY THE COURT.

Abraham Strauss, a resident of Jefferson County, Arkansas,
died in 1894, possessed of certain real and personal property,
the rental value of which was about $1,000 or $1,500. He dis-
posed of this property by will, of which the material parts, so
far as this case is concerned, are as follows:

"I will and bequeath to my wife, Hanchi Strauss, all my
property, real, personal and mixed, of which I may die seized and
possessed, with the right to sell and convey the two lots on Pullen
street and one lot on Scull street for the purpose of supporting
the family, and I desire that my said wife do not marry again,
but live single with the children of my family and take care of
them. I will and bequeath to my children all my estate, real,
personal and mixed, to be divided among them equally after the
death of my wife; but my said wife to have full control of every-
thing during her life. The children who are legal heirs of my
estate are as follows, towit: Simon Strauss, Carrie Joseph, *nee*

Strauss, Allie Strauss, Rena Strauss, Josie Strauss, Mina Edna Strauss, who after the death of my wife are to inherit my whole estate, share and share alike."

The testator had been twice married, and five of the children named in the will were children of his first wife, who died in 1882. Their respective ages were at time the will was executed as follows: Simon, 27; Carrie, 25; Allie, 19; Rena, 18; and Josie, 14 years of age. One of the two children by his last wife was at that time 9, and the other 5 years old.

After the death of their father all of these children, with the exception of two that were married, made their home with Mrs. Strauss until her marrige to Isaac Bloom, which took place in 1898. After that time the children by the first wife lived separate and apart from her, and afterwards brought this action, alleging that Hanchi Bloom, their stepmother, was appropriating the whole income of the property to herself and excluding them from any beneficial interest therein; she claiming that plaintiffs had, under the will of their father, no interest in the property. They asked that the will be construed, their rights under it defined, and that defendant be compelled to account for the rents and profits derived from the estate.

The defendant appeared, and answered, and denied that plaintiffs had any right to the rents and profits thereof during her life.

On the hearing the chancellor held that the widow of Strauss took the estate devised for life in trust for the support of the family of the testator, and that the children were entitled to share in the proceeds during the life of the widow. Defendant appealed.

*Irving Reinberger* and *J. W. Crawford,* for appellants.

In a will the intention of the testator must prevail.  13 Ark. 513; 108 Mass. 529; 1 Redf. Wills, 496. The word "children" sometimes means minor children.  61 Ark. 579. The widow of Abraham Strauss was not a trustee.  88 N. Y. 228; 2 Sim. 267; 8 Chan. Div. 540; 25 Eng. Rep. 459; 52 S. W. 202. Words assigning a reason do not raise a trust.  Beach, Wills, 403; 135 Ill. 398; 130 Mass. 461; 1 Perry, Trusts, § 119; 128 Ill. 187; 98

Ill. 625; 18 Gratt. 541; 41 Ark. 51; Underhill, Trusts, 21, 36; 2 Pom. Eq. Jur. § 1015; 2 Story, Eq. Jur. 1069. The doctrine of precatory trusts has never met with unanimous approval. 2 Pom. Eq. Jur. § 1017; 20 Pa. St. 268; 59 Am. Dec. 718; 25 Am. St. Rep. 373; 88 N. Y. 228; 11 Nev. 442; 15 Ala. 296; 49 Md. 573; 44 Am. Dec. 377; 31 Ark. 380; 2 Redf. Wills, 442; 49 Am. Dec. 435. The chancellor's decree as to the accounting of rents was erroneous. Only infant children were entitled to same. 66 Ark..148; 1 Perry, Trusts, § 118; 2 Perry, Trusts, § 615. When a supplemental bill is filed, it must be in respect to the same title in the same person as stated in the original bill. Story, Eq. Pl. § 339; 4 Paige, 259; 8 Price, 518; 4 Sim. 76. The motion to strike from the complaint should have been sustained. Sand & H. Dig. § 5703; Bliss, Code Pl. § 117; Newman, Pl. & Pr. 458. The widow of Strauss had a right to insure the property for her benefit. 1 Wood, Fire. Ins. 645; 1 May. Ins. 6, 80; 2 Cush. 412; 1 Jones, Mortg. 396.

*J. M. & J. G. Taylor* and *White & Altheimer,* for appellees.

The property under the will could not be sold during the life of the widow. 36 S. E. 737. The extent of the beneficial interest under the will can be ascertained and enforced. 2 Hare, 607; 3 Kay, 497; 4 Mass. 634; 49 Ia. 219; 140 Mass. 557. There is no distinction in favor of the minor children. 69 Ark. 94; 45 Ark. 191; 48 Ark. 312. Errors or defects in proceedings which do not affect substantial rights of the adverse party are not sufficient for reversal. Sand. & H. Dig. § 5772; 42 Ark. 196. The object of the supplemental bill was to recover money paid by the insurance company from the faithless trustee. 2 Perry, Trusts, 836; 1 Perry, Trusts, 427; 91 Mass. 382; 31 Ark. 580; 1 Perry, Trusts, § 112.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment of the chancery court of Jefferson County construing the will of Abraham Strauss and holding that it created a trust in favor of his children. It is very plain that the testator has not expressly declared that this property should be held in trust by the widow for the support of herself and the children named in the will; but it is argued with much force that the will, taken

as a whole, and considered in the light of the circumstances surrounding the testator at the time it was executed, shows that such was his intention.

It is no doubt true that a trust sometimes arises "when property is given to a parent, or person in *loco parentis*, with no trust declared in terms, but with such directions for the maintenance of his family or children as enable the court to infer an intention on the part of the donor that the property should be held in trust for the purposes of the maintenance. No definite rule can be laid down, for each case must stand upon its own circumstances. If the language is sufficient for the intention to be clearly inferred, the trust will be enforced; otherwise the donee will take an absolute estate,. and the provisions concerning maintenance will be regarded as mere motives for the gift and recommendations addressed to his discretion." 2 Pomeroy, Eq. Jur. § 1012.

The earlier English decisions had a tendency to adopt a rule that words in a will expressing a desire, entreaty, or recommendation as to the disposition of property for the benefit of others would create a trust, but, to quote the language of Chief Justice Gray, "by the later cases, in this, as in all other questions of the interpretation of wills, the intention of the testator, as gathered from the whole will, controls the court; in order to create a trust, it must appear that the words were intended by the testator to be imperative; and when property is given absolutely and without restriction, a trust is not to be lightly imposed, upon mere words of recommendation and confidence." *Hess* v. *Singler*, 114 Mass. 56.

In deciding cases of. this kind courts must ascertain the intention of the testator from the language of the whole will, considered in the light of the circumstances under which it was made. No absolute rule, as before stated, can be deduced from the decisions, for they are seemingly in great conflict—a conflict which no doubt arises because each case of this kind must turn upon its own peculiar circumstances and the language of the particular will to be construed.

Bearing in mind these observations, we proceed now to consider the will before us. After looking at the whole of this will, we feel certain that the testator gave his property to his wife for life with remainder to his children, and the question presented

is whether this life estate given to the wife was devised to her in trust for the children.. Now, it being clear from the will that the wife was given an estate for life, and that the testator intended that she should, to quote the language of the will, have "full control of everything during her life," the courts should not defeat this intention by taking charge of the property and directing, contrary to her wishes, how it should be managed and the income therefrom distributed, unless it appears with reasonable certainty that the testator really intended to impose a trust upon the life estate devised to his wife.

The language of the will which bears most directly on this point is as follows: "I will and bequeath to my wife, Hanchi Strauss, all my property, real, personal and mixed, of which I may die seized and possessed, with the right to sell and convey the two lots on Pullen street and one lot on Scull street for the purpose of supporting the family, and I desire that my said wife do not marry again, but live single with the children of my family and take care of them." Now, there may be some ambiguity about this language, for we are not absolutely certain whether the words "for the purpose of supporting the family" were intended to limit and explain the clause by which the property was devised, or whether it only limits that part of it which gives to the wife power to sell and convey the two lots on Pullen street and one on Scull street. The chancellor who heard the case was of the opinion that the words "for the purpose of supporting the family" modified all of that part of the sentence preceding it, and that the meaning of the whole sentence is that the property was devised for the purpose of supporting the testator's family, and that power was also granted to sell the lots named for that purpose. In other words, he held that this property was devised expressly for the purpose of supporting the family, and that therefore the devisee took it in trust for that purpose. He delivered a very clearly stated opinion, upholding that view of the matter. If we felt sure that the language of the will means what the chancellor took it to mean, we could concur in his judgment; but after a careful consideration of it a majority of us are of the opinion that the words "for the purpose of supporting the family" only refer to and limit the clause giving the right to sell the lots mentioned. The construction of the sentence seems to make that its natural meaning.

In order to understand the object of the testator in conferring on his wife this power to sell these lots, we must take into consideration the latter part of the will where the devise to her is clearly cut down and limited to a life estate with remainder to his children. When the whole will is considered, it seems to us to have the same meaning as if, instead of the language used, the testator had said, "I devise to my wife all my property for and during her natural life, with remainder to my children, with power in her to sell the fee in the two lots on Pullen street and one on Scull street if she finds it necessary to do so for the support of my family."

Having concluded that the words "for the purpose of supporting the family" refer to the clause in reference to the sale of the lots only, and that, of themselves, they impose no trust upon the life estate given the wife, we have next to consider whether there is other language in the will from which the intention of the testator to create a trust may be inferred. The only other words that could possibly raise any such an inference are those where the testator says: "I desire that my wife do not marry again, but live single with the children of my family and take care of them." But these words do not by any means clearly show such a purpose. Indeed, this clause does not, it seems to us, refer to property, but to the personal care and attention that a parent should bestow on a child, and which the testator desired that his wife should continue to give his children.

We have not overlooked the fact that this wife was the second wife of the testator, and that prudence might have dictated that he should have imposed something stronger than a moral obligation upon her to give support to the children of his first wife if he desired that she should do so. But the children of the first wife had at the time the will was executed reached the age of self-support, if it became necessary for them to earn their own living. The youngest of these children was 14, while the next youngest was 18 at that time; and as they had adult brothers and sisters, two of whom had homes of their. own, the testator perhaps felt that it was not necessary that he should incumber the property with a trust, in order to give to them a right of support from the income with the result that the control of his wife over the property might be interfered with or taken away by a court of chancery. The two children by his second wife were then

infants of tender age, and, no doubt, the objects of his greatest solicitude. His wife had no property of her own, and, to make sure that she should have the means of support for herself and these two infant children, he gave her the property and the income therefrom for her life untrammeled by a trust, in the belief, no doubt, that she would render to the younger children by his first wife who made their home with her any needed assistance she might be able to give.

He expressed ·in the will his desire that she should not marry, but remain single, and live with and take care of the children. As she was at that time a woman of mature age, 45 or 50 years old, he no doubt felt confident this request would be obeyed. When we consider her age, and that she had two young children of her own by the testator, and lived with several of the other children of the testator, and that the total income from the property devised was not over $1,000 or $1,500, we are not able to say that the disposition of the property by the will, as we construe it, was unwise, and unreasonable. To leave the property to his wife for life with remainder of his children seems to us a very natural disposition of property by a man who had confidence in his wife, and no great amount of property to dispose of.

It is probably true that he expected that she would devote a part of the income of this life estate towards the maintenance of the younger children by his first wife. His confidence that she would do this was no doubt one of the reasons that caused him to give her the property for life, but something more than this is needed to create a trust. It is a common matter for husbands to devise property to wives in the expectation that it will be used for the benefit of their children, but the mere fact that this is the reason that underlies a devise or bequest does not create a trust in favor of the children. If that was so, a man having children could not devise his property to his wife without creating a trust in favor of his children, for that is generally one of the reasons that underlie such gifts. The property is frequently given absolutely, not only with no intention of creating a trust, but often with the specific intention not to create one; the testator preferring to rely entirely upon the discretion of his wife in the management of his estate, rather than to subject her to the risk of having it taken from her control by the court.

When a wife in such a case fails to carry out the wishes of her deceased husband, we naturally feel that she should be compelled to do so; but for the courts to do that would be to make by construction a different will from the one made by the testator, and this the courts should never do. We can not reconstruct this will, so as to make it what subsequent events may have shown that the testator should have made it, for we are bound by it as it left his hands. It is a question of intention purely, and, after a full consideration of the matter, we feel compelled to hold that the intention to create a trust is not shown.

After the will was executed, the testator died. The widow and children of the executor lived happy together for about four years, when a suitor in the person of Mr. Isaac Bloom appeared, and Mrs. Strauss yielded her consent, married, and became Mrs. Bloom. And then the pleasant relations that had existed between her and her stepchildren terminated. This lawsuit was begun by the stepchildren, in which we are asked to declare a trust in their favor on the income of this property. But we are of the opinion that by virtue of the will Mrs. Bloom owns an absolute life estate in this property, and that it is not burdened with any trust, unless one be necessary to carry into effect that provision of the will that after her death the estate should go to the testator's children, or unless she should sell the lots which the will empowers her to sell for the support of the family. There may be some moral obligations upon her to aid these children from the income received by her, as we read the will, but there is no obligation binding in law, and we are of opinion that, so long as she does not injure the estate in remainder, she can spend the income as she pleases. *Sturgis* v. *Paine,* 146 Mass. 354.

We have now to consider another question raised by the appeal the facts of which, though unknown to the testator and not considered by us in arriving at his intention as expressed by the will, go incidentally to show that as a matter of fact the disposition he made of his property in the will was not unwise, considered even in the light of subsequent events.

A good portion of the property owned by them at the time of his death came to him by virtue of his first wife. The testator claimed the ownership of this property by virtue of a devise from his first wife, and no doubt intended that it should pass by his will to his second wife for life with remainder to his children.

But it turned out that the will of his first wife was ineffectual on account of her failure to mention the names of her children therein.   See *Bloom* v. *Strauss,* 70 Ark. 483.

So the husband had no estate in that property that he could devise, and all of it passed by inheritance to the children of his first wife, thus reducing to a large extent the value of the devise to his second wife.   But, before litigation arose between Mrs. Bloom and her stepchildren, she claimed this property as a part of the estate of her late husband.   She was the administratrix of that estate, and as such she took out a fire insurance policy on a house which belonged to her stepchildren, the appellees here, but which she in good faith believed to be the property of the estate of her deceased husband.   The property was for that reason described in the policy as belonging to that estate, and was made payable thereto in case of loss.   The property was destroyed by fire, and the insurance company paid her the amount of the policy, and the question is raised as to whether this fund arising from the policy belongs to Mrs. Bloom in her own right, or whether it belongs to the estate of her husband of which she was administratrix at the time it came to her hands.   The chancellor found that the premiums paid for this policy were paid by Mrs. Bloom, as administratrix of the estate of A. Strauss, out of the funds of that estate, and as the policy was payable to that estate, he decided that the amount received on the policy belonged to the estate. We are of the opinion that this ruling was correct, but, as the will does not devise or attempt to dispose of any property except that which the testator "died seized and possessed," this insurance money, coming to the estate subsequently, did not pass by the will. The insurance company having of its own free will paid this fund to the estate for the loss of property that did not belong to the estate, the fund must be treated as a new acquisition, just as if the company had given it to the estate, and so it does not come within the terms of the will, and must be disposed of in the same way it would have been had Strauss died intestate.

Counsel for appellant raise the question as to whether this last matter was properly joined in an action to construe the will, but, as the judgment must, for the reasons stated, be reversed,

we regard it as unnecessary to decide that question. For the reasons stated the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

WOOD and McCULLOCH, JJ., dissent.