## WOOLDRIDGE *v.* GILMAN.

### Opinion delivered January 18, 1926.

1. WILLS—CONSTRUCTION.—The primary rule of construction of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole will and a comparison of its various clauses in the light of the situation and circumstances which surrounded the testator when the instrument was executed.

2. WILLS—PRECATORY WORDS.—Whether precatory words in a will impose an imperative obligation on legatees, or are but the expression of a hope or recommendation, the carrying out of which is left to such legatees, must be determined by the language actually used, the context, and the consideration of the will as a whole.

3. WILLS—CONSTRUCTION OF PRECATORY WORDS.—Where a will bequeathed all of the testator's bank stock to a legatee with "request" that she never dispose of it but keep it to educate her two children, naming them, without indicating whether the legatee

should consume the principal or merely the income, and without defining the extent and character of their education, the word "request" was a mere expression of hope or confidence on the part of the testatrix, and did not create a trust.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Elizabeth Gilman brought this suit in equity against Charles Gilman and William Gilman and the Simmons. National Bank to obtain the construction of a will executed by A. E. Sherrill Lindsay, and prays that she be declared the absolute owner of certain shares of stock in the Simmons National Bank. The body of the will reads as follows:

"I, Annie E. Lindsay of Sherrill, Jefferson County, Arkansas, now being of sound mind and in good physical health, but recognizing the uncertain duration of life, and desiring to make a proper disposition of my wordly effects and estate, do make, publish and declare this instrument as for and to be my last will and testament, hereby revoking all other wills and testaments by me heretofore made.

"Item 1. I commit my body to the dust and commend my immortal spirit to God who gave it, with firm faith and reliance upon His infinite wisdom, goodness and mercy.

"Item 2. I desire that all my just debts be paid at once, out of my estate, or as soon as possible after my death, avoiding all unnecessary expense, delay or litigation.

"Item 3. I desire my name to be engraved on the monument of Dr. A. R. Sherrill at Bellwood Cemetery, this to be paid with other expenses before my estate is divided, all expenses to be shared equally by those mentioned as legatees.

"Item 4. I leave my stock in Consumers' Ice & Coal Company in connection with war saving stamps owned by me to go to keeping in order my lots in Bell-

wood Cemetery, and want all to see that flowers are taken there often, and hope that Elizabeth Gilman will do the kindness to see that my wishes are carried out in this respect.

"Item 6.   To Elizabeth Gilman I bequeath my entire stock in the Simmons National Bank, and request that she never dispose of it, but keep to educate her children, Chas. and William Gilman.

"Item 7.   I also leave to Elizabeth Gilman $1,000, one thousand dollars, of my life insurance in Massachusetts Mutual Insurance Company, to use till she can get dividend from other property left to her, and I request the said Elizabeth Gilman to give her attention to keeping my lots and graves at Bellwood Cemetery in good condition and keep flowers on same.

"Item 8.   To Elizabeth Gilman I leave my property, 'house and lot' 611 W. 4th Ave., Pine Bluff, Arkansas, for a home for herself and children, and to always keep it, but, if at any time she desires to dispose of it, to let my sister and family be offered it before trying elsewhere to sell.

"Item 9.   Lots 2, 3, block 5, Sherrill, Ark., were bequeathed to Elizabeth Gilman by my husband, A. R. Sherrill, at his death, subject to my signature, which I now bequeath to her, to be hers at my death, with all improvements thereon.   Deed signed will be found in my safe, at Sherrill, Arkansas.

"Item 10.   To my sister, Sallie Alexander, I give and bequeath my half interest, about 340 acres, in the Sherrill real estate, after it is divided between myself and the heirs of A. R. Sherrill's brother, Llewellan Sherrill, of McNairy County, State of Tennessee.   There being five children in all in Tennessee and Mississippi.

"Item 11.   Also to my sister, Sallie Alexander, I bequeath $1,000, one thousand dollars, of life insurance after the money borrowed on it has been paid to the Massachusetts Mutual Company.   The amount she can use until she gets some returns from farm land,

should there be a crop to be settled up.   I desire all of my debts paid before the real estate is given to Sallie Alexander, and all expenses settled before any of my bequests are carried out.

"Item 12.   To my sister's seven children I bequeath my stock in Gillespie & Bros. $25,000 twenty-five thousand dollars, Veo B., Olivia, John L., James, Albert, Elizabeth and Edwin Alexander, and to them also $8,000 eight thousand dollars, of my life insurance in Massachusetts Mutual, to be divided equally, after my debts are paid, to the above-named children.

"Item 13.   To my nephew, John L. Alexander, I do leave my Porto Rico property, about 120 acres, to do as he thinks best with.   To Albert Alexander I bequeath my Liberty Loan stock at the Simmons National Bank. To Elizabeth Alexander my lots in Forest Park Addition (lots 1, 2, block 3) to dispose of to suit herself, also my diamond earrings I give to Elizabeth Alexander. All my other jewelry I bequeath to Elizabeth Gilman to do as she thinks best with.

"I appoint my nephew, Veo. B., and brother-in-law, V. O. Alexander, as executors of this will, and request that they carry out my wishes herein stated to the best of their ability.

"I neglected to state that I bequeath to little Nell Alexander $250 out of life insurance to buy a set of furniture to suit herself.   I request that all will assist in keeping my lots in Bellwood in good repair, and give attention often to fresh flowers on graves.

"Now this document is written in a very irregular way and with poor ink and pen, and I hope to copy it, but, should I fail to do so, I know that my sister and all will see that my last wishes are carried out as I have requested herein.   Mr. Jo. Nichol, Dr. Orto and many others can swear to my signature."

The testatrix died in Jefferson County, Ark., on November 26, 1920, and the will was duly admitted to probate.

According to the testimony of Elizabeth Gilman, she is forty-three years of age, and has known the testatrix for thirty-nine years. The witness was left an orphan at the age of four years, and was raised by the testatrix. The witness married in 1914, and had two children named Charles and William Gilman. At the time of her marriage the witness lived with the testatrix. Upon her marriage she went to the State of Washington, which was the home of her husband, and lived there until he died. At his death, at the request of the testatrix, the witness returned to Arkansas with her two children and resided with the testatrix until her death. The testatrix was very fond of the witness, and the latter had the care and custody of the home of the former for about three months before she died. On various occasions, the testatrix told the witness that she was going to leave her her stock in the Simmons National Bank. The witness at all times helped the testatrix with her household work while she lived with her.

The chancellor found that, under item six of the will, Elizabeth Gilman was the absolute owner of the seventy shares of stock in the Simmons National Bank, which the testatrix owned at the time of her death. It was therefore decreed that Elizabeth Gilman was the absolute owner of seventy shares of stock in the Simmons National Bank under the terms of said will, free of any charge or trust whatever.

To reverse that decree, the defendants have duly prosecuted an appeal to this court.

*Harry T. Wooldridge,* for appellant.
*Coleman & Gantt,* for appellee.

HART, J., (after stating the facts). The primary rule of construction in the interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole will and a comparison of its various clauses in the light of the situation and circumstances which surrounded the testator when the instrument was

executed. *Bloom* v. *Strauss,* 73 Ark. 56; and *Colton* v. *Colton,* 127 U. S. 300.

No hard and fast rule can be laid down to determine when precatory words will be construed to create a trust; but the intention is to be gathered in each case from the general purpose and scope of the instrument. Whether precatory words impose an imperative obligation on legatees, or are but the expression of a hope or recommendation, the carrying out of which is left to the discretion of such legatees, must now, according to the weight of authority, be determined by the language actually used, the context, and the consideration of the will as a whole. *O'Brien* v. *M'Carthy* (Court of Appls. Dist. of Columbia), 285 Fed. 917; *In Re Marti's Estate* (Sup. Ct. of Cal.), 61 Pac. 924; *Webb* v. *Webb,* 111 Ark. 54; and *Cook* v. *Worthington,* 116 Ark. 328.

Item six of Mrs Lindsay's will is the one under consideration, and is as follows; "To Elizabeth Gilman I bequeath my entire stock in the Simmons National Bank, and request that she never disposes of it, but keep to educate her children, Chas. and William Gilman."

It is the contention of counsel for the appellants that, under this clause of the will, the stock owned by the testatrix in the Simmons National Bank at the time of her death vested in Elizabeth Gilman charged with a trust enforceable in equity in favor of her minor children, Chas. and William Gilman. In support of his contention, counsel points out that in other clauses of the will both real and personal property are left absolutely to Elizabeth Gilman, and that this shows clearly that the precatory language was intended to be imperative, and to create a trust in favor of the minor children of Elizabeth Gilman. Hence it is contended that the acceptance of the property by Elizabeth Gilman under the will is upon the condition that she will comply with the request of the testatrix with regard to the education of her children, and that she should be held as a trustee for that purpose.

On the other hand, it is contended that when the language of item six is taken in its ordinary and grammatical sense, it carries with it merely an expression of hope or confidence, and does not import a command.

We are of the opinion that the latter construction, when considered in the light of the context of the will and the circumstances surrounding the testatrix, will best carry out her intention. The testatrix had raised Elizabeth Gilman, and was greatly interested in her welfare. After the death of the husband of Elizabeth Gilman, at the request of the testatrix, she returned with her two children to live with her, and during the last few months of the life of the testatrix she took charge of her household. The testatrix always exhibited affection and interest in Elizabeth Gilman. She made an absolute bequest to Elizabeth Gilman of her entire stock in the Simmons National Bank. It is true that the bequest is coupled with a request that she never dispose of it, but keep it to educate her children, Chas. and William Gilman. Under authorities laid down above, in order that the recommendation or request be held to be imperative and thereby create a trust, it is necessary that the subject and objects should be definite and certain. The clause of the will under consideration does not state with certainty whether or not the legatee should consume the principal or merely the income of the bequest in educating her children. It does not even indicate the character and extent of their education. Hence it will be seen that it is too ambiguous and uncertain as to the objects to be enforced as a trust, and we are of the opinion that there is no obligatory meaning to the word "request."

In the case at bar the word "request" is employed as a mere expression of hope or confidence on the part of the testatrix that the legatee will use the bank stock in the education of her children, but the extent and character of their education is left wholly to the judgment of the legatee. Therefore, we do not think the language

used justifies the conclusion that the testatrix intended to create a trust in favor of Charles and William Gilman.

The result of our views is that the decree of the chancellor was correct, and it will therefore be affirmed.