Hoyle *v.* Baddour.

4-4446

Opinion delivered November 30, 1936.

*R. B. McCulloch,* for appellants.

*H. B. Mixon,* for appellee.

McHaney, J. This is an action for specific performance by appellee against appellants as trustees of the estate of Mrs. C. Adella Hughes, deceased, to compel them as such trustees to convey to him lots 6 and 7 of block 31, of the Mrs. C. A. Hughes subdivision No. 1 of the town of Hughes, St. Francis county, Arkansas. The

complaint alleged that the title to said lots is in appellants as trustees with power to sell; that on November 23, 1935, he purchased said lots from said trustees for a valuable consideration; that he has fully complied with his part of said contract to purchase, but that appellants have refused to convey said property to plaintiff. The action was defended on the ground that, under the will of the late Mrs. C. Adella Hughes, they lacked the power to sell and convey, and prayed a construction of the will by the court. The case was submitted to the trial court upon an agreed statement of facts which we set out in full as follows: "Mrs. C. Adella Hughes, prior to her death in 1929, was the owner and in possession of several hundred acres of farm lands adjacent to the town of Hughes, St. Francis county, Arkansas. She also owned numerous town lots in the town of Hughes, and numerous town lots in subdivisions adjacent to the town of Hughes. Mrs. Hughes had been a resident of Hughes, Arkansas, for many years, and she took great pride in the prosperity of the town which bears her name. It was her hope and ambition that the town of Hughes would some day be one of the principal business and residential centers in eastern Arkansas.

"Prior to her death, Mrs. Hughes had caused a certain portion of the farm lands adjacent to the town of Hughes to be divided into lots and blocks, and the plat of such subdivision was filed for record in the office of the recorder of St. Francis county, Arkansas, and designated as Mrs. C. A. Hughes Subdivision No. 1 of the town of Hughes, Arkansas. She had also caused other farm lands to be subdivided into lots and blocks as subdivisions adjacent to the town of Hughes. She had also subdivided certain property located in the corporate limits of the town of Hughes into lots and blocks.

"The plats of such subdivisions were all filed in the office of the recorder of St. Francis county, Arkansas. Mrs. Hughes, during her lifetime, had sold and conveyed numerous lots located in the town of Hughes and adjacent thereto in order to encourage the construction of homes and business houses in such town.

"The town of Hughes is located in the center of one of the most fertile farming sections in eastern Arkansas. During the past twenty years the town has experienced a very rapid growth. Numerous business houses, cotton gins, filling stations, dwelling houses, churches and schools have been constructed in and adjacent to the town.

"Mrs. Hughes died in the year 1929, and was survived by J. P. Hughes, her only child. She was also survived by Robert M. Hughes and Joseph B. Hughes, who are the children of J. P. Hughes. Robert M. Hughes is now 16 years of age and Joseph B. Hughes is now 12 years of age.

"Mrs. Hughes disposed of her real and personal property by last will and testament which has been filed and admitted to probate by the probate court of St. Francis county, Arkansas. A copy of the last will and testament is made a part of the agreed statement of facts; and such last will and testament will be set forth in this abstract. W. G. Hoyle and J. Gordon Love are now the duly qualified and acting trustees under the last will and testament of Mrs. C. Adella Hughes, deceased.

"J. P. Hughes, the only child of Mrs. C. Adella Hughes, died during the year 1933, and was a resident of Lee county, Arkansas, at the time of his death. J. P. Hughes left surviving him Robert M. Hughes and Joseph B. Hughes, his sons, as his heirs at law. By the terms of the last will and testament of J. P. Hughes, the said W. G. Hoyle and J. Gordon Love were appointed testamentary guardians and curators of the persons and estates of the said Robert M. Hughes and Joseph B. Hughes and are now acting as such.

"The estate of Mrs. C. Adella Hughes and the estate of J. P. Hughes were both solvent, and the income from the real estate and personal property belonging to said estate is more than sufficient for the support, education and maintenance of said minors.

"On and prior to November 23, 1935, the said W. G. Hoyle and J. Gordon Love, as trustees of the estate of Mrs. Hughes, had so construed the last will and testa-

ment of Mrs. Hughes as to authorize them to sell and convey all town lots in and adjacent to the town of Hughes, and which belonged to such estate, pursuant to the provisions of paragraph four of such will. Pursuant to the authority which they deemed to be invested in them by the provisions of such will, the said trustees on November 23, 1935, agreed to sell and convey to the plaintiff the property belonging to said trust estate and described as lots 6 and 7 of block 31 of the Mrs. C. A. Hughes subdivision of the town of Hughes, Arkansas. The plaintiff agreed to pay for such lots the sum of $500; and the plaintiff has paid on said purchase price the sum of $100 and has tendered to said trustees the balance of said purchase price in the amount of $400 and demanded that the trustees convey such property to him. The plaintiff has fully complied with all terms and provisions of such real estate sales agreement. The trustees have refused to convey such property to the plaintiff until it has been determined by a court of competent jurisdiction that such trustees have the power to sell and convey such property.

"The trust estate consists of numerous town lots located within the corporate limits of the town of Hughes, some of which are suitable for business houses and some of which are suitable for dwelling houses. All of such lots were subdivided and dedicated prior to the death of Mrs. Hughes. The trustees are also the owners of numerous town lots adjacent to the town of Hughes which are suitable for dwelling houses and which were subdivided by Mrs. Hughes prior to her death. The trust estate also consists of other real estate and personal property not involved in this litigation or pertinent to this controversy.

"Since the death of Mrs. Hughes there has been a substantial demand for residence and business lots located in and adjacent to the town of Hughes. The trustees have received numerous offers from persons who are ready, able, and willing to purchase lots in and adjacent to Hughes for the construction of homes and business houses and who are able and willing to pay the fair market value for such lots.

"The sale of town lots owned by the estate in and adjacent to Hughes will have a tendency to increase the market value of the remaining town property belonging to said estate; and will also increase the value of the farming property adjacent to the town of Hughes and belonging to such estate. The property located in and adjacent to Hughes and which has been subdivided into lots and blocks and which are unimproved are subject to general and special taxes; and, so long as such property remains unimproved, the same will produce no income for said estate.

"Because of the location of the property of such estate in the town of Hughes and adjacent thereto, the growth of such town will be retarded if such lots remain unimproved until Joseph B. Hughes reaches the age of 21 years, or would have reached such age. Taking into consideration the growth of Hughes, it is necessary and advisable to sell town lots belonging to the estate located in the town of Hughes and adjacent thereto for homes and business houses to such persons as are ready, able and willing to purchase the same and pay the fair market value therefor."

The pertinent provision of the will, after conveying all of her real property to a trustee and providing how long the trust shall continue, is as follows: "The said trustee shall not have power to sell or dispose of or incumber any of said property except that I do not want to retard the growth of the town of Hughes, Arkansas. And if it becomes necessary or advisable, considering the growth of the town of Hughes, to use certain of the lands adjacent thereto as an addition to the town of Hughes, my said trustee is authorized to plat the needed ground into city lots and dedicate the same by proper conveyance as an addition to the town of Hughes, and to sell and dispose of such portions of said property as city lots * * *."

The trial court made a finding of facts substantially in accordance with the agreed statement and entered a decree reciting that "the court, having examined and construed the last will and testament of Mrs. C. Adella

Hughes, deceased, * * * finds that the trustees of said estate have power and authority, under the terms of said last will and testament to sell and dispose of the lots and blocks belonging to said estate located in the town of Hughes, Arkansas, and adjacent thereto and constituting lands subdivided by Mrs. C. Adella Hughes prior to her death and constituting lands subdivided by said trustees subsequent to the death of Mrs. C. Adella Hughes.'' The trustees have appealed.

Construed literally and strictly, the language of the will above quoted confers authority on the trustees to sell only such lots as they themselves plat as an addition to the town of Hughes, Arkansas, and not such as she had already platted prior to her death. But we are of the opinion that the language above quoted did not literally express Mrs. Hughes' intention with regard to the power conferred upon her trustees in the sale of lots in and adjacent to the town of Hughes, Arkansas. She said, ''I do not want to retard the growth of the town of Hughes, Arkansas.'' According to the agreed statement of facts, Mrs. Hughes owned at the time of her death a number of lots and blocks in said town which she had platted prior to her death and which still remained unsold and unimproved at the time of her death. She had sold a great many of these lots and blocks during her lifetime. The lots involved in this litigation were in a subdivision which had been platted by her in her lifetime, and in which a number of lots had been sold prior to her death and a number still remained unsold at that time. It would appear to be an anomalous situation to confer power on the trustees to sell only such lots as they themselves might plat as a new addition to the town when there remained a great number of unsold lots in the town in additions already platted by her prior to her death. In one clause of her will she says she does not want to retard the growth of Hughes: ''The said trustees shall not have power to sell or dispose of or incumber any of said property except that I do not want to retard the growth of the town of Hughes, Arkansas.'' If, as the agreed statement of facts discloses, she owned

a great many lots already platted in the town of Hughes at the time of her death, which the trustee had no power to sell, it would appear certain that it would retard the growth of the town of Hughes if the trustees have no power to sell same. We have frequently held that in the construction of wills courts will endeavor to arrive at the intention of the testator, which intention is generally to be gathered from the language used. Where the language is plain and unambiguous and no doubt is left regarding that intention, there is no room for construction. As said again in *Hughes* v. *Strickland,* 174 Ark. 454, 295 S. W. 722: "The purpose of all rules of construction is to enable the courts to arrive at the intention of the testator, and are to be invoked only when that intention is in doubt." In *Wooldridge* v. *Gilman,* 170 Ark. 163, 279 S. W. 20, the late Chief Justice HART used this language: "The primary rule of construction in the interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole will and a comparison of its various clauses in the light of the situation and circumstances which surrounded the testator when the instrument was executed," citing *Bloom* v. *Strauss,* 73 Ark. 56, 84 S. W. 511; *Colton* v. *Colton,* 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138. There are many cases to the same effect in our reports, but we deem it unnecessary to cite them. Considering this clause of the will in the light of these well-settled principles and in giving effect to all the language used in said clause, we have reached the conclusion that it was the intention of the testator to confer power on her trustees to sell any and all lots which she owned at the time of her death and which had been platted by her, as well as those subsequently platted by the trustees. If we concede that express authority was not conferred upon the trustees to sell said lots, it seems certain that the power to sell must be implied. In 3 Bogert on Trusts and Trustees, page 1734, it is said: "Implied powers are those which are not clearly and directly given by the settlor or a court, but which equity believes the founder of

the trust or a court granting express powers intended should exist. They are implied or inferred from the terms and purposes of the trust. If a settlor has directed the trustee to reach a certain end, he must be deemed to have intended that the trustee use the ordinary and natural means for obtaining that result. The court reads such a desire into the trust instrument, not because the court is adding something to the trustee's authority for the sake of bringing about a result which it thinks would be just, but for the reason that chancery believes that the settlor actually wished the trustee to have such power, although he did not in so many words grant the authority.''

So here, the testator gave the express power to the trustees to sell lots subdivided by them and expressed the desire to promote the growth of the town of Hughes, which, of course, means growth in population as well as in area, and it would seem necessarily to follow that, in order to accomplish her purpose, she had the intent to confer power to sell all lots already platted by her which remained unsold at the time of her death.

This was the effect of the decree of the chancery court, which is accordingly affirmed.