Housley *v.* Housley.

5-3302                                               379 S. W. 2d 272

Opinion delivered June 1, 1964.

[Rehearing denied October 5, 1964.]

*Pope, Pratt & Shamburger,* for appellant.

*John Harris Jones,* for appellee.

George Rose Smith, J. V. W. Housley died on June 6, 1963, leaving a will that he had executed on July 22, 1960. This application for a construction of the will was submitted to the probate court by agreement of the parties. The court held the will to be inoperative, so that the estate passed by intestacy to the appellee, the decedent's son and only heir. The appellant, the decedent's brother, insists that the will effectively devised and bequeathed the entire estate to him.

V. W. Housley and his son, the appellee, had been estranged for some time. In the second paragraph of his will V. W. directed that his son should not share in any property that he might leave. Then follows the third paragraph, which gives rise to this controversy and reads essentially as follows:

"III. Reposing the utmost confidence in the integrity and judgment of my brother, W. M. Housley

[the appellant], of Little Rock, Arkansas, who knows my and our relatives and kindred, their worthiness and needs and my feelings and affections concerning each of them, I hereby give, devise and bequeath to my said brother, W. M. Housley, all of the property of every nature, kind and classification; real, personal or otherwise designated, of which I die seized and possessed . . . in fee simple, unconditioned and unrestricted, to possess, to hold, to use, to own, to barter, to sell or to give away at his will and pleasure and to pass title thereto absolutely and in fee simple and to receive the consideration therefor, if any, and receipt therefor, without any accounting therefor to anyone, in accordance with instructions I have given my brother concerning my burial and the adjustment of any amounts I may owe, including taxes, if any and, also, with respect to any property which passes to him under this will and said property will pass to him by title absolute and in fee simple unconditionally and without restriction.''

The will was prepared by an attorney, and a copy of it was sent to the appellant, the sole beneficiary. Almost three years elapsed between the execution of the will and the testator's death. The appellant denies that his brother gave him any instructions about the disposition of the estate, but there is much testimony that casts doubt upon the credibility of the appellant's statement. We need not consider whether the execution of the will was induced by fraud, as the appellee charges, for we think the probate court was right in holding the will to be inoperative.

There is no real question about the controlling rules of law. The difficulty lies in their application to this will. ''Oral instructions cannot be incorporated into a written will by any words of reference, however clear, since by statute the will must be in writing. Accordingly, a gift to A to be used in accordance with testator's former instructions, or a gift 'with the hope and expectation and perfect faith that she will expend so much of the income and principal thereof, if it should become necessary in the carrying on of a certain charity in which she knows

I am deeply interested,' or a gift 'in accordance with my instructions to her,' or a gift 'to carry out instructions that I may leave in writing or verbally which I have not yet fully completed,' cannot operate as an incorporation of such oral instructions into the will as a part thereof." Page on Wills (Bowe-Parker Rev.), § 19.33. When the testator makes such an attempt to bequeath property to one who is to dispose of it in accordance with the testator's oral instructions, this provision in the will is void. The gift fails. *Fitzsimmons* v. *Harmon,* 108 Maine 456, 81 Atl. 667; *Moore* v. *O'Leary,* 180 Mich. 261, 146 N. W. 661; *Gross* v. *Moore,* 22 N. Y. S. 1019.

The appellant insists that the testator's dominant intention was to vest the fee simple title in his brother. It is argued that, as in *Wooldridge* v. *Gilman,* 170 Ark. 163, 279 S. W. 20, the additional language in the will should be treated merely as an explanation of the testator's reasons for disposing of his property as he did.

We do not find this argument to be persuasive. No doubt V. W. Housley did intend to vest the fee simple title in his brother, but that fact alone does not solve our problem. If he intended for W. M. Housley to receive the fee so that he would be in a position to carry out V. W.'s oral instructions, then the third paragraph in the will is invalid. By analogy a trustee often takes the fee simple, as when he is given a power of sale and must be in a position to convey the fee, but he nevertheless holds the property in trust. Restatement, Trusts, Second, § 88.

The pivotal question is whether V. W. intended for his brother to have the beneficial interest in the property. We think it plain that he did not. It would have been a simple matter for this testator, especially with the assistance of an attorney, to make an absolute devise of his property to his brother in fee simple. Yet clause after clause in the will indicates that V. W. was not making an outright gift. If that had been his intention why did he think it necessary to express his confidence in W. M.'s integrity and judgment? Why did he think it necessary

to observe that W. M. "knows my and our relatives and kindred, their worthiness and needs and my feeling and affections concerning each of them"? Why did he think it necessary to declare that W. M. could dispose of the property and receive the consideration therefor, without accounting to anyone? Why, especially, did he say that the property was left to W. M. with the power to dispose of it "in accordance with instructions I have given my brother . . . with respect to any property which passes to him under this will"? Every one of these declarations is wholly inappropriate—indeed, completely irrelevant—if W. M. was to receive the beneficial interest in the estate. Yet each clause is of genuine significance if V. W. meant for his brother to carry out his oral instructions with respect to the gift. To sustain the appellant's position we should have to disregard every meaningful phrase in the controlling paragraph of this will except the declarations that W. M. was to take the property in fee simple. Yet, as we have seen, those declarations alone cannot govern our decision, because if V. W. intended for the appellant to distribute the property among the two brothers' relatives it was still necessary first to vest the fee in W. M.

The testator's attempt to disinherit the appellee fails, for the property was not effectively left to anyone else. *Williams* v. *Norton,* 126 Ark. 503, 191 S. W. 34. It is unfortunate that the decedent's intention must be thwarted; but even a reversal would not help matters, since the appellant declines to (and could not lawfully) carry out whatever his brother's wishes may have been.

Affirmed.

McFADDIN, ROBINSON, and HOLT, JJ., dissent.

SAM ROBINSON, Associate Justice (dissenting). I fully agree that the intention of the testator has been thwarted. In fact, it has been blocked, obstructed and defeated, all on the theory that doubtful language in the will creates a trust, and yet in the same breath the majority says no valid trust was created. There was a devise *absolutely* to a brother; therefore, I say the doubtful language

should not be construed as creating a trust, valid or invalid.

In this case the intention of the testator is clear. If there is any doubt about how the will should be construed, it should be construed so as to give effect to the intention of the testator. Yet, the doubtful language in the will is construed by the majority in a manner that absolutely defeats the expressed and known intention of the testator. In so doing, the majority does not follow established principles of will construction.

Actually, no trust was set up, valid or invalid. No trustee is named, no beneficiary is named, no duties of a trustee are specified, and no purposes of a trust are mentioned. The will was prepared by an able lawyer. It is not likely that an experienced lawyer would draw a will to create a trust and never mention the word trust. Not one time does the will in question use the word trust.

It is said in 49 A. L. R. 34: "There is a simple, sure, and familiar form of bequest to raise a trust, which consists of a devise to the legatee in trust to the beneficiary, and the failure to use it has been held to indicate an intention to avoid the creation of a trust. As remarked in one case: 'It certainly seems singular that a testator, having a full and settled intention to create a trust (for that is what must be read on the face of the will or no trust can exist), should adopt a mode which at best appears to be a mere suggestion, or inference, instead of employing the familiar method and creating the trust by an express declaration.' "

In *Woolridge* v. *Gilman*, 170 Ark. 163, 279 S. W. 20, the language was more indicative of creating a trust than is the language in the case at bar. There, the will provided: "To Elizabeth Gilman I bequeath my entire stock in Simmons National Bank, and request that she never dispose of it, but keep it to educate her children, Charles and William Gilman." In holding that no trust was created, this court said: ". . . the word 'request' is employed as a mere expression of hope or confidence on the part of the testatrix that the legatee will use the bank

stock in the education of her children, but the extent and character of their education is left wholly to the judgment of the legatee. Therefore, we do not think the language used justified the conclusion that the testatrix intended to create a trust in favor of Charles and William Gilman.''

An intent to create must be clearly expressed by the language of the will. *Bloom* v. *Strauss,* 73 Ark. 56, 84 S. W. 511; *Wallace* v. *Wallace,* 179 Ark. 30, 13 S. W. 2d 810.

''On the principle that words which cut an estate down must be as clear as those which create it, an absolute and beneficial interest which is clearly given will not be cut down to the legal title of a trustee by precatory words, unless they show testator intention to create a trust as clearly as though he had created it by express words.'' Page on Wills, Vol. 5, § 40.5, p. 116, 117.

In the case at bar, the will is clear and explicit that the property be left in fee to the testator's brother, the appellant herein. The will provides: ''I hereby give, devise and bequeath to my said brother, William Housley, all the property of every nature, kind and classification, real, personal or otherwise designated . . . and title absolute and in fee simple, unconditional and unrestricted . . . and said property will pass to him by title absolute and in fee simple, unconditional and without restrictions.'' It is hard to see how language could be more explicit in giving the property to the brother in fee.

We have repeatedly held that words of art must be given their technical meaning. *Pletner* v. *Southern Lumber Co.,* 173 Ark. 277, 292 S. W. 370; *Fine* v. *McGowan,* 186 Ark. 1035, 57 S. W. 2d 565.

This rule is so firmly established that it is a rule of property. *Shields* v. *Shields,* 179 Ark. 167, 14 S. W. 2d 545. In *Moody* v. *Walker,* 3 Ark. 147, the court said: ''When technical phrases or terms of art are used, it is fair to presume that the testator understood their meaning, and that they expressed the intention of his will,

according to their import and signification. When certain terms or words have by repeated adjudication received a precise, definite and legal construction, if the testator in making his will use such terms or similar expressions, they shall be construed accordingly to their legal effect . . . and . . . if this was not the case, titles to estates would be daily unsettled, to the ruin of thousands. It is all-important to the interest of society, that the rules of property should be definitely settled, and that they should possess uniformity and consistency.''

''In fee simplè'' are words of art; they have only one meaning. Ballentine Law Dictionary, p. 494; 19 Am. Jur. 471-473.

It is presumed that the testator knew and understood the meaning of the words used in the will. *Crittenden* v. *Lytle,* 221 Ark. 302, 253 S. W. 2d 361; *Galloway* v. *Darby,* 105 Ark. 558, 151 S. W. 1014. In the Galloway case, the court quotes from Doebler's Appeal, 64 Pa. St. 9, as follows: ''It becomes no man and no court to be wise above that which is written. Security of titles requires that no mere arbitrary discretion should be exercised in conjecturing what words the testator would have used, or what form of disposition he would have adopted, had he been truly advised as to the legal effect of the words actually employed. That would be to make a will for him, instead of construing that which he had made.''

The devise to appellant is as clear as a bell—''title absolute and in fee simple, unconditional and unrestricted.'' Doubtful language thereafter used should not be construed as cutting down the fee. ''. . . an absolute gift in a will cannot be cut down by subsequent inconsistent language of doubtful or ambiguous significance, it being necessary before such a result will be permitted that the language indicating an intention to cut down the gift be as clear, plain, and unequivocal as that used in the gift itself; that the presumption is that the first taker receives a fee in spite of subsequent words casting doubt on the question; that in case of doubt as to the quantity of an estate devised, the general rule is

that an absolute rather than a qualified estate was intended; and that where a devise of an absolute interest is made, subsequent limitations attempting to deprive the estate of any of the incidents appertaining to it are repugnant and void." 57 Am. Jur., Wills § 1320.

These rules are supported by many Arkansas cases, including *Moody* v. *Walker*, 3 Ark. 147; *Byrne* v. *Weller*, 61 Ark. 366, 33 S. W. 421; *Bernstein* v. *Bramble*, 81 Ark. 480, 99 S. W. 682; *Letzkus* v. *Nothwang*, 170 Ark. 403, 279 S. W. 1006; *Union Trust Co.* v. *Madigan*, 183 Ark. 158, 35 S. W. 2d 349; *Collie* v. *Tucker*, 229 Ark. 606, 317 S. W. 2d 137.

Appellee relies on *Lytle, Ex'r.* v. *Zebold*, 235 Ark. 17, 357 S. W. 2d 20, but in that case there was no doubt whatever that a trust was created prior to the use of the language that could be construed as limiting a fee. Here, it will be remembered that the language devising a fee in the property is clear, unequivocal, and unambiguous. No one can say that the language depended on here to establish a trust is not doubtful. In *Ross* v. *Ross,* 135 Ind. 367, 35 N. E. 9, the court said: "Where an estate in fee is devised in one clause of a will in clear and decisive terms, it cannot be taken away or cut down by raising a doubt upon a subsequent clause, not by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the estate in fee."

In *Burnes* v. *Burnes*, 137 Fed. 781, Mr. Justice Sanborn said: "The crucial question in the interpretation of this will is, did the testator intend to impose an imperative obligation upon his brothers to apply his estate, or their property, to the equal benefit of all the children of each of them, or to express a desire that they should do so, and to intrust to their discretion the exercise of the option to comply or refuse to comply with his wish? In *Knight* v. *Knight,* 3 Beav. 148, 172-174, Lord Langdale declared the law upon this subject in language which has rarely, if ever, been excelled in strength and clearness. He said:

'As a general rule, it has been laid down that when property is given *absolutely* [our italics] to any person, and the same person is by the giver, who has power to command, recommend or entreated or wished to dispose of that property in favor of another, the recommendation, entreaty, or wish shall be held to create a trust: First, if the words are so used that, upon the whole, they ought to be construed as imperative; secondly, if the subject of the recommendation or wish to be certain; and, thirdly, if the objects or persons intended to have the benefit of the recommendations or wish be also certain. . . . On the other hand, if the giver accompanies his expression of wish or request by other words, from which it is to be collected that he did not intend the wish to be imperative, or if it appears from the context that the first taker was intended to have a discretionary power to withdraw any part of the subject from the object of the wish or request, or if the objects are not such as may be ascertained with sufficient certainty, it has been held that no trust is created.' ''

In the case at bar, the testator devised the property *absolutely* to his brother. If the rule discussed by Judge Sanborn in the Burnes case was followed here, and there is no sound reason why it should not be followed, the appellee could not prevail because the language in the will said to create a trust is not imperative; and the persons claimed to have the benefit of the alleged trust are not certain. Furthermore, if a trust was created, certainly as trustee the brother would have ''a discretionary power to withdraw any part of the subject from the object of the wish or request.''

In my opinion, the law is clear that here it should not be said that the will creates a trust. I, therefore, respectfully dissent.

McFADDIN, J., joins in this dissent.